# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JOHN AND MARY DOE,**<br>**for themselves and their minor child,**<br>**JAMES DOE,** | ) ) ) | |
| | ) | **No.: 2:25-cv-00170-DCLC-CRW** |
| **v.** | ) | |
| | ) | **JURY DEMANDED** |
| **PROVIDENCE ACADEMY, INC., and** | ) | |
| **BENJAMIN HOLLAND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants Providence Academy, Inc. ("Providence") and Benjamin Holland ("Mr. Holland") (collectively "Defendants"), by and through counsel, hereby file this Memorandum of Law in Support of their Partial Motion to Dismiss as to claims under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX") a Tennessee state tort claims contained in the Complaint filed by Plaintiffs identified as John and Mary Doe, for themselves and their minor child, James Doe (the "Minor Plaintiff") ("collectively "Plaintiffs") as follows:

## FACTS AND PROCEDURAL HISTORY

Defendant Providence is a private Christian school located in Washington County, Tennessee. Complaint ¶ 5. Providence is organized as a charitable organization under Section 501(c)(3) and holds a tax-exempt status with the Internal Revenue Service. Complaint ¶ 117. Providence received $546,236.40 in assistance through the Paycheck Protection Program ("PPP"). *Id.* PPP loans were created as part of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") which Congress enacted on March 27, 2020 in response to the COVID-19

1

pandemic. *Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286-94 (2020)* (codified at 15 U.S.C. § 636(a)); *see Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 223-24 (2d Cir. 2021) (providing an overview of the CARES Act and the PPP). PPP loans were made through the Small Business Administration ("SBA") and were designated "temporary" under SBA guidance. 85 Fed. Reg. 20811. The CARES Act and the PPP initially provided $349 billion in loan commitments to be available through June 30, 2020. CARES Act § 1102(b)(1). The CARES Act and the PPP were amended and extended multiple times, with the final extension coming in the PPP Extension Act of 2021, *Pub. L. No. 117-6 § 2(b), 135 Stat. 250, 250*, extending the PPP until June 30, 2021. Under the final extension, the Administrator of the SBA could not accept new PPP applications after May 31, 2021. *Id.*

Approximately three years later, in the 2023-2024 school year, the minor Plaintiff James Doe was fourteen years old and attended the eighth grade at Providence Academy. Complaint ¶ 12. On Sunday, February 11, 2024, James Doe went to a private residence to attend a "watch party" of Super Bowl LVIII (the "Super Bowl party"). Complaint ¶ 11. Other minors who were classmates of James Doe also attended the Super Bowl party. *Id.* At some point during the Super Bowl party, four minors who were classmates of James Doe pinned him to the floor and/or held him down, and a minor identified as L.T. digitally penetrated James Doe's anus or attempted to do so. Complaint ¶ 13. Plaintiffs do not allege that the Super Bowl party was a school function of Providence, that the private residence was property owned or controlled by Providence, or that any employees of Providence were present at the Super Bowl party. Complaint, *infra*.

Four days later, on February 15, 2024, the minor James Doe reported the assault that had occurred at the Super Bowl party to one of his teachers at Providence. Complaint ¶ 47. She reported the assault to Mr. Holland as Head of School, and Providence notified law enforcement. Complaint

¶¶ 47, 59. Providence suspended and determined to expel the minor L.T. for his role in the assault on minor James Doe. Complaint ¶ 63. The minor L.T. was arrested, charged with, and convicted of an offense related to his assault of the minor James Doe. Complaint ¶¶ 63, 70.

On February 15, 2024, the minor James Doe sent a video perceived as "depicting gun violence and the insinuation of a violent revenge," and James Doe was provisionally expelled pending investigation by Johnson City Police Department. Complaint ¶¶ 61, 65. Providence determined to expel the minor James Doe for the video depicting gun violence on February 21, 2024. Complaint ¶ 71.

Plaintiffs commenced this suit on October 13, 2025, asserting a claim of discrimination against Providence under Title IX (Count I), and Tennessee state law claims against both Defendants, including negligence (Counts II and III) negligence *per se* (Counts III and VII), intentional infliction of emotional distress (Counts IV and VI), and negligent infliction of emotional distress (Count V). Complaint ¶¶ 113-200.

## **RULE 12 STANDARD**

A claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). "But mere speculation is insufficient[.]" *Hensley Mfg. v. Propride, Inc.*, 579 F.ed 603, 613 (6th Cir. 2009).

3

"The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

In its guidance in applying the legal standard in *Ashcroft v. Iqbal*, the Supreme Court has noted that there are "[t]wo working principles" at play:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Iqbal*, 556 U.S. at 663 (emphasis added) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## LAW AND ARGUMENT

### I.     Plaintiff's claims under Title IX fail as a matter of law.

As an initial matter, to assess the claims asserted by Plaintiffs under Title IX, it is necessary to clarify which of the Plaintiffs have asserted claims under Title IX. Plaintiff's Complaint states that "[t]he minor James Doe … asserts his claims through his parents John and Mary Doe."

4

Complaint ¶ 136. This is consistent with federal case law, which generally finds that "Title IX claims concerning the treatment of students are appropriately brought by the students themselves." *Haley v. Clarksville-Montgomery Cty. Sch. Sys.*, 353 F. Supp. 3d 724, 733 (M.D. Tenn. 2018); *see also* Harris v. Shelby Cty. Schs., 2017 U.S. Dist. LEXIS 127462 at 7-8 (W.D. May 12, Tenn. 2017); 28 U.S.C. § 1654. Thus, the minor Plaintiff James Doe is the only claimant asserting a claim under Title IX, doing so through his parents.

In order to prevail in James Doe's claims under Title IX, Plaintiffs must prove sufficient facts to support a finding that Defendant is subject to Title IX. Providence is a private Christian school rather than a public school, and Plaintiffs must therefore establish facts to show that Defendant was a "recipient" of federal financial assistance within the meaning of 34 C.F.R. § 106.2. *NCAA v. Smith*, 525 U.S. 459 (1999). Specifically, 34 C.F.R. § 106.2 defines "recipient" to include any entity to which "federal financial assistances is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof." Although Title IX does not define federal financial assistance, Department of Education regulations define "federal financial assistance" for the purposes of Title IX as follows:

> Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
>> (1) A grant or loan of Federal financial assistance, including funds made available for:
>>> (i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and
>>> (ii) Scholarships, loans, grants, wages, or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not,

5

upon such sale or transfer, properly accounted for to the Federal Government.

(3) Provision of the services of Federal personnel.

(4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.

(5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

34 C.F.R. § 106.2.

In Paragraphs 116 through 119 of their Complaint, Plaintiffs have raised three theories under which they allege Defendant is subject to the provisions of Title IX:

116. Providence Academy received at least $546,236.40 in Federal assistance through the Paycheck Protection Program, and Defendant Providence Academy was the beneficiary of Federal financial assistance under the provisions of Title IX at all times relevant to this Complaint.

117. Providence Academy is organized as a § 501(c)(3) charitable organization, and it is exempt from the payment of federal income tax.

118. Providence Academy is a new member school of the Tennessee Secondary School Athletic Association (the "TSSAA"). The application process for prospective member schools is extensive, and it requires that prospective member schools address myriad issues (including but not limited to the school's policies and procedures for proper handling of issues covered by Title IX) to the TSSAA's satisfaction. Providence Academy voluntarily agreed to comply with Federal Title IX when it applied for membership in or, alternatively, when it was granted membership in, the [TSSAA].

119. Pleading in the alternative, Defendant Providence Academy ceded control of its operations, including but not limited to control of its athletic department in which the minor Plaintiff James Doe was a participant, to the TSSAA. The TSSAA is a recipient of Federal financial assistance within the meaning of Title IX. 12 20 U.S.C. § 1681(a). By ceding control of all or part of its operations to the TSSAA, including submitting to the rule and regulations by which its athletic department shall operate, Defendant Providence Academy is subject to Title IX.

Complaint ¶¶ 116-19. As argued more fully below, each such theory fails as a matter of law.

6

1. Defendant's receipt of PPP loans does not subject it to Title IX.

The first argued basis for Plaintiffs' allegation that Providence is subject to Title IX is because it received a PPP loan during the COVID-19 pandemic. Plaintiffs allege—and Defendants do not dispute—that Providence applied for and "received PPP $546,236.40 in Federal assistance through the Paycheck Protection Program[.]" Complaint ¶ 116. However, under the very terms of the CARES Act, such application and receipt by Providence must have occurred on or before May 31, 2021. PPP Extension Act of 2021 § 2(c). Plaintiffs assert as a legal conclusion that "Defendant Providence Academy was the beneficiary of Federal financial assistance under the provisions of Title IX at all times relevant to this Complaint," but do not allege that Providence received PPP funds in the 2023-2024 school year. Complaint ¶ 116. Indeed, under the CARES Act and PPP Extension Act of 2021, Providence's receipt of PPP funding must have occurred prior to the 2021-2022 school year. PPP Extension Act of 2021 § 2(c).

Whether PPP loans subject a party to Title IX has been the subject of litigation in multiple federal courts since the implementation of PPP loans in 2020 in the early days of the COVID-19 pandemic. As the District Court for the District of Nevada has noted, "Given the nature of the COVID-19 Pandemic and the urgency behind the PPP loans, it is likely that little thought was given as to whether such loans counted as 'receiving federal financial assistance.'" *Gardner v. Sage Ridge Sch.*, No. 3:24-CV-00403-CLB, 2025 U.S. Dist. LEXIS 114896, at *18 (D. Nev. June 17, 2025). The court in *Gardner* went on to provide the following background:

> PPP loans were enacted by Congress by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") during the unprecedent COVID-19 Pandemic. *See* 15 U.S.C. § 636(a)(36). The CARES Act and the PPP loans programs were enacted as "assistance and [a] health care response for individuals, families, and businesses affected by the coronavirus pandemic." Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 120). PPP loans were enacted to assist small businesses to

7

continue operations and "keep[] workers paid and employed across the United States" during the COVID-19 crisis. *Id.* Unlike typical SBA loan programs, a PPP loan could be made to "any [small] business," non-profit organization, [*19] and other organization or business concern that qualifies as small under industry-specific rules. 15 U.S.C. § 636(a)(36)(D)(i). The SBA's guidance regarding the PPP loans notes that while the loans were eligible "for forgiveness of up to the full principal amount," the nature of the program was "temporary." 85 Fed. Reg. 20811. The loans were based on eight weeks of payroll and business costs. *Id.* Loans issued before June 5, 2020 had a maturity date of two years. *Id.* at 20813. But nowhere in the statutes or federal regulations regarding the PPP loans are there any references or clear conditions to abide by Titles VI or IX. *See* 15 U.S.C. § 636; 85 Fed. Reg. 20811.

*Gardner*, 2025 U.S. Dist. LEXIS 114896 at *18.

One of the first courts to examine the question of whether PPP loans or forgiveness constituted "federal financial assistance" for the purposes of Title IX was the District Court for the Eastern District of North Carolina, in *Karanik v. Cape Fear Academy*. In *Karanik*, the District Court Judge concluded that "[a] PPP loan is 'federal financial assistance' subject to Title IX because it is "[a] grant or loan of Federal financial assistance" 34 C.F.R. § 106.2(g)(1). After all, "the PPP is, in substance and in form, a loan program." *Karanik v. Cape Fear Academy*, 608 F. Supp. 3d 268, 281 (E.D.N.C. 2022) (citing *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 423 (2nd Cir. 2022)). The court in *Karanik* went on to hold that the school in that case "had to comply with Title IX for the life of its loan." *Karanik*, 608 F. Supp. at 284 (emphasis added). Because the plaintiffs in *Karanik* alleged that the discriminatory behavior occurred during the loan period of the PPP loans obtained by the school in that case, the plaintiffs were allowed to proceed with their claim. Notably, that factual scenario differs from the case at bar, which involves acts occurring in February 2024, long after the final extensions of the PPP.

In its recent ruling on June 17, 2025, the U.S. District Court for the District of Nevada assessed all current case law on the interplay of Title IX and PPP loans, and its analysis is instructive. In *Gardner v. Sage Ridge School*, parents of a minor child brought suit against the

8

defendant school asserting various causes of action, including violations of Title IX of the Education Amendments of 1972. The Court in *Gardner* evaluated those claims, and in particular, noted findings from the Middle District of Tennessee and the Third Circuit Court of Appeals in its analysis.

> Looking to other forms of federal emergency relief, regulations from the Federal Emergency Management Agency ("FEMA") specifically "effectuate the provisions of Title VI of the Civil Rights Act of 1964," 44 C.F.R. § 7.1, and "Title IX of the Education Amendments of 1972," 44 C.F.R. § 19.100. To receive FEMA funding, FEMA requires applicants to submit "assurances . . . that each education program or activity operated by the applicant or recipient and to which these Title IX regulations apply will be operated in compliance with these Title IX regulations." 44 C.F.R. § 19.115(a). Unlike FEMA disaster relief, SBA guidance does not call out to Title VI or IX. *See* 85 Fed. Reg. 20811. Thus, the Court will not read in requirements for recipients of PPP loans, absent other forms of federal funding, to comply with Title VI or IX.
>
> Additionally, per Titles VI and IX, Sage Ridge must be *receiving* federal assistance. As the Middle District of Tennessee aptly noted: "use of the word 'receiving'—the present participle of 'receive'—makes it unequivocally clear that the program or activity at issue must be receiving, or 'com[ing] into possession of,' such assistance." *Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746, 778 (M.D. Tenn. 2025), *adhered to on reconsideration*, No. 3:24-CV-00422, 2025 U.S. Dist. LEXIS 46909, 2025 WL 824137 (M.D. Tenn. Mar. 14, 2025) (citing Receive, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/receive (last visited February 14, 2025)). As another Court found, an entity's receipt of a PPP loan constituted "'federal financial assistance' and had to comply with Title IX for the *life* of its loan." *Karanik v. Cape Fear Acad., Inc.*, 608 F. Supp. 3d 268, 284 (E.D.N.C. 2022) (emphasis added). Sage Ridge received the loan in April 2020 for expenses covering the school the following eight weeks. The Paycheck Protection Program ended on May 31, 2021. The PPP loan that Sage Ridge received matured in April of 2022 and was forgiven in its entirety. (ECF No. 26 at 5.) Sage Ridge and Gardner did not sign their employment contract until April 17, 2023 and Doe did not enroll at Sage Ridge until later in 2023. *Id.* at 7-8.)
>
> The Court finds that permitting application of Titles VI and IX under the circumstances of this case would permit application of the statutes indefinitely and in situations where agreements between the federal government and entities have concluded. The Court acknowledges the unprecedent circumstances of the COVID-19 Pandemic and the needs of thousands, if not millions, of businesses. But absent clear Congressional intent or federal regulatory authority, the Court will not read in Title VI or IX requirements many years past the issuance of the limited and

9

> emergency PPP loan that Sage Ridge received in 2020. *See Pennhurst State Sch. & Hosp.*, 451 U.S. at 17 ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.").

*Gardner*, 2025 U.S. Dist. LEXIS at *18-21 (emphases added). The *Gardener* court went on to hold that the plaintiffs in that case had not sufficiently alleged that the defendant school in that case receives federal financial assistance such that it would be subject to Title IX, and found that the plaintiffs in that case had failed to state a claim under Title IX against the defendant school. *Id.* at *21. The *Gardner* court further held that amendment under Fed. R. Civ. P. 15 would be futile "because no set of facts can be added to Plaintiffs' … Title IX claims that would constitute a valid and sufficient claim." *Id.*

Similarly, in the recent case of *Davis v. Winston Preparatory School*, where the allegedly discriminatory actions took place before any PPP loans were sought or received, the District Court for the Southern District of New York held that Title IX did not apply to the school because the defendant school had not "received qualifying 'Federal financial assistance' — in the form of a PPP loan — at a time contemporaneous with the alleged discriminatory conduct." *Davis v. Winston Preparatory Sch.*, 2025 U.S. Dist. LEXIS 123630 at *38 (S.D.N.Y. Jun. 30, 2025) (emphasis added). Thus, though the court rulings of *Davis* and *Gardner* dealt with different time periods—one before PPP loans and one after PPP loans—their holdings are complimentary, and Defendant submits that the Court should adopt their reasoning.

In the case at bar, Plaintiffs allege that Defendant "received"—in the past—PPP loans and/or forgiveness. Complaint ¶ 116. Plaintiffs do not allege that Defendant is currently receiving PPP loans through the Small Business Administration or any other federal entity, nor do they allege that Defendant was receiving such loans in February 2024 when the assault of the complaining minor child occurred. Complaint, *infra*. Indeed, Defendant could not have received any PPP loans

10

in 2024, as such loans were discontinued no later than May 31, 2021. *Gardner*, 2025 U.S. Dist. LEXIS 114896, at \*20; PPP Extension Act of 2021 § 2(c). And unlike cases such as *Karanik v. Cape Fear Academy*, the events in this case did not take place during the 2020-2021 academic year, when a school such as Providence might be alleged to be "receiving" PPP loans. Karanik, 608 F. Sup. 3d 268. To use the terminology employed by the Southern District of New York, Plaintiffs have failed to allege that Defendant had "received qualifying 'Federal financial assistance' — in the form of a PPP loan — at a time contemporaneous with the alleged discriminatory conduct." *Davis*, 2025 U.S. Dist. LEXIS 123630 at \*38 (emphasis added). As the Middle District of Tennessee has observed, the only way for the Plaintiffs' argument on the PPP loan to have merit would require this Court to "read 'receiving' as 'received,'" which runs counter to canons of construction and the plain meaning of the statute. *Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746, 778 (M.D. Tenn. 2025).

Defendants request that the Court follow the recent examples of the Southern District of New York and District of Nevada, as well as its neighbors in the Eastern District of North Carolina and the Middle District of Tennessee, and find that past receipt of PPP loans does not constitute "receiving" federal funds for the purposes of claims under Title IX.

2. Providence's tax-exempt status does not subject it to the provisions of Title IX.

Plaintiffs have additionally alleged in their Complaint that "Providence Academy is organized as a § 501(c)(3) charitable organization, and it is exempt from the payment of federal income tax." Complaint ¶ 117. However, such arguments run contrary to long-standing case law and were recently rejected by the Courts of Appeals for the Third Circuit and Fourth Circuit, and should be rejected here.

11

The Supreme Court, in *NCAA v. Smith*, has clarified which educational institutions are covered by Title IX and which are not: "Entities that *receive* federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that *only benefit economically from* federal assistance are not." *NCAA v. Smith*, 525 U.S. 459, 465 (1999) (emphases added).

Noting the regulations contained in 34 C.F.R. § 106.2(g), which set forth the definition of "federal financial assistance" for the purposes of Title IX, the Northern District of Illinois has noted, "[C]onspicuously absent from that laundry list is income tax exemption." *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n Illinois, Inc.*, 134 F. Supp. 2d 965, 971-72 (N.D. Ill. 2001). The District of Arizona similarly observed, "'Tax-exempt status' is not listed as a form of federal financial assistance in the Department of Education's definition and tax-exempt status is not assistance 'authorized or extended under a law administered by the Department,' as the introductory phrase of the regulatory definition requires." *Doe v. Horne*, 2023 U.S. Dist. LEXIS 240844 at *6 (D. Ariz. Dec. 11, 2023).

These holdings are consistent with long-standing Supreme Court precedent regarding tax-exempt status held by a variety of religious and private institutions. "The grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state. No one has ever suggested that tax exemption has converted libraries, art galleries, or hospitals into arms of the state or put employees 'on the public payroll.'" *Walz v. Tax Com. of New York*, 397 U.S. 664, 675, 90 S. Ct. 1409, 25 L. Ed. 2d 697 (1970). In the case at bar, Plaintiffs are essentially attempting to suggest just that—the tax-exempt status converted Defendant, a private Christian school, into an "arm[] of the state," which notion the Supreme Court has dismissed since 1970.

The most recent reported case addressing the issue of Title IX and tax-exempt schools was decided by the Court of Appeals for Fourth Circuit, which found that 501(c)(3) status did not constitute receipt of federal funds for the purposes of Title IX. In *Buettner-Hartsoe v. Baltimore Lutheran High School Association*, a plaintiff had brought suit against a private school under Title IX related to alleged sexual harassment and/or assault. *Buettner-Hartsoe v. Baltimore Lutheran High School Assoc.,* 96 F.4th 707 (4th Cir. 2024) There, as here, the defendant school was exempt from federal taxes but denied receiving direct federal funding or federal financial assistance. The defendant school moved to dismiss, and the district court denied the motion. On appeal, the Fourth Circuit found that "the plain text of Title IX contemplates the 'transfer of funds from the federal government to an entity.'" *Id.* at 712. After surveying Supreme Court precedent construing the scope of when Federal financial assistance includes indirect assistance, the Fourth Circuit determined that the phrase "receiving Federal financial assistance" meant "taking or accepting federal financial aid, help, or support, even when that assistance is through an intermediary." *Id.* at 712-13 (citing *Grove City College v. Bell*, 465 U.S. 555, 563-70 (1984); *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 607 (1986); and *NCAA v. Smith*, 525 U.S. at 468). The Fourth Circuit observed that "Tax exemption merely allows organizations to keep the money they otherwise would owe in income tax," and was "unconvinced" by arguments made by the plaintiff that tax exempt status was similar to indirect grants that were at issue in *Grove City College v. Bell*, 465 U.S. 555 (1984). The Fourth Circuit went on to hold that "tax exempt status pursuant to 26 U.S.C. § 501(c)(3) does not equate to 'receiving Federal financial assistance' for purposes of Title IX," and reversed the lower court's denial of the defendant school's motion for summary judgment.

The Fourth Circuit's reasoning in *Buettner-Hartsoe* was immediately cited and followed by the District Court for the Western District of Michigan. In *Chen v. Hillsdale College*, the district court relied on the "well-reasoned decision" in *Buettner-Hartsoe*, concluding "that Defendant's § 501(c)(3) status does not implicate the terms of Title IX's proposed contract with educational institutions," and dismissed the plaintiff's claims with prejudice. *Chen v. Hillsdale Coll.*, 2024 U.S. Distr. LEXIS 247928, at *44-45 (D. W. Mich. Sep. 13, 2024). In so doing, the District Court in *Chen* rejected the plaintiff's argument that that court should follow the holding of *E.H. v. Valley Christian Academy*, which had found that "[t]ax exempt status confers a federal financial benefit that obligates compliance with Title IX." *E.H. v. Valley Christian Acad.*, 616 F. Supp. 3d 1040, 150 (C.D. Cal. 2022). The plaintiffs in *Chen* did not appeal "the rejection of their federal claim under Title IX, presumably because Hillsdale does not accept any funding from the federal government." *Chen v. Hillsdale Coll.*, 2025 U.S. App. LEXIS 22135 at *6 (6th Cir. 2025 Aug. 28, 2025).

Closer to home within the Sixth Circuit, in *Doe v. Currey Ingram Academy*, the Middle District of Tennessee reached a similar conclusion, that 501(c)(3) status did not constitute receipt of federal funds for the purposes of Title IX. *Doe v. Currey Ingram Acad.*, 721 F. Supp. 3d 682 (M.D. Tenn. 2024). In *Currey Ingram*, the plaintiff claimed that Currey Ingram Academy "receives federal assistance in multiple ways," and also that "Currey Ingram is a 501(c)(3) entity that is tax-exempt." The Court held that these allegations were not sufficient and stated the "Plaintiffs have failed to satisfy the *Twombly/Iqbal* standard because they have failed to allege facts (taken as true, of course), that plausibly suggest that this element is satisfied." *Id.* at 690 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

> It is entirely clear to the Court that the Government's provision (through the Internal Revenue Service) to Defendant of tax-exempt status does not fit within the

14

definition of Federal financial assistance. If one goes through each of the five categories [contained in 34 C.F.R. § 106.2(g)], it is readily apparent that none cover the mere provision of tax-exempt status. The first category manifestly would be the most likely, and yet it cannot reasonably be set that that tax-exempt status—which the Court will construe in Plaintiffs' favor to necessarily entail enabling the entity to keep funds that otherwise would be payable to the federal government as income tax—does not constitute a "grant or loan" of anything whatsoever.

*Id*. at 688.

Finally, most recently, the Southern District of New York's holding in *Davis v. Winston Preparatory School* also examined the question of whether tax exemption subjected a school to the requirements of Title IX. *Davis*, 2025 U.S. Dist. LEXIS 123630 at *39-40. The District Court in *Davis* held that the tax-exempt status defendant school in that case under "Section 501(c)(3) organization is not sufficient to demonstrate that it receives 'Federal financial assistance' for purposes of Title VI, Title IX, or the Rehabilitation Act." *Id*. at 44. Notably, in so holding, the *Davis* court declined to extend the holding from a 1988 case in the Southern District of New York that had formerly held that tax exemption could qualify as federal assistance, as well as the similar ruling of the more recent *E.H. v. Valley Christian Academy* from the Central District of California that tax-exempt status constituted receipt of federal funds. *See Fulani v. League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988); *Valley Christian*, 616 F. Supp. 3d at 1050. The *Davis* case, which was presented with both the PPP loan argument and the 501(c)(3) status argument, is highly similar to the case at bar, and the *Davis* court rejected both arguments. So, too, should the Court in this matter, following the emerging line of cases both within the Sixth Circuit and beyond.

3. <u>Membership in the TSSAA does not trigger application of Title IX.</u>

Plaintiffs are no doubt aware of the trend in cases examining the application of Title IX, and have offered what appears to be a novel—if flawed—argument for why Providence should be

subject to Title IX. Plaintiffs allege that Providence is a member of the TSSAA, and that "[t]he application process for prospective members schools … requires that prospective member schools address myriad issues (including but not limited to the school's policies and procedures for proper handling of issues covered by Title IX) to the TSSAA's satisfaction." Complaint ¶ 118. Plaintiffs neglected, however, to state what requirements in the "application process" would subject Providence to Title IX. The Complaint cites no such requirements, and doesn't attach any application materials, bylaws, or other documentation that could support such a claim.

"Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, 'the defendant may introduce the pertinent exhibit,' which is then considered part of the pleadings." *Travis v. ADT Sec. Servs.*, 884 F. Supp. 2d 629, 634 (E.D. Mich. 2012) (quoting *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais & Co.*, Inc., 108 F.3d 86, 89 (6th Cir. 1997). Accordingly, Defendants are filing the 2023-24 TSSAA Handbook for the 2023-2024 school year ("TSSAA Handbook") as <u>Exhibit A</u> to their motion, which is requested to be considered "part of the pleading" pursuant to Fed. R. Civ. P. 10(c).

The TSSAA Constitution, which is included the first five pages of the TSSAA Handbook, identifies the purpose of the TSSAA "to stimulate and regulate interscholastic athletic competition among member schools in accordance with the standards established by those schools in the TSSAA Bylaws." TSSAA Handbook p. 1, Constitution § 2. The Bylaws of the TSSAA are contained in pages 8-35 of the TSSAA Handbook. However, nowhere in the Bylaws or the Constitution of the TSSAA is there any reference to Title IX or its requirements, nor does the TSSAA Handbook mention discrimination. Presumably, this is why Plaintiffs did not attach any

16

TSSAA documentation as an exhibit to their Complaint—it does not support their Title IX claims. But by asserting that Providence's membership in the TSSAA subjected it to the provisions of Title IX, Plaintiffs must cite to some language in some instrument or document that could support that legal theory, and Plaintiffs have failed to do so. Plaintiffs essentially have attempted to rely on "mere conclusory statements," which is not permitted at the Rule 12 stage. *Iqbal*, 556 U.S. at 678; *Stuart v. Lowe's Home Ctrs., LLC*, 737 Fed. Appx. 278 (6th Cir. 2018). Accordingly, Plaintiffs' Title IX claim under a theory of TSSAA membership fails as a matter of law, because it presents no claim upon which relief could be granted under Title IX.

4. Providence did not cede control of its operations to the TSSAA and thereby subject itself to the requirements of Title IX.

Plaintiffs attempt to create an alternative theory of liability under Title IX and the TSSAA by asserting that "Defendant Providence Academy ceded control of its operations, including but not limited to control of its athletic department in which the minor Plaintiff James Doe was a participant, to the TSSAA." Complaint ¶ 119. Plaintiffs then assert that TSSAA is a recipient of federal financial assistance within the meaning of Title IX, and allege that because the TSSAA is subject to Title IX, Providence must also be subject to Title IX due to the purported "control of its operations" exercised by the TSSAA. *Id.* This final legal theory also fails to state a claim under Title IX upon which relief may be granted.

Title IX governs not only organizations that receive direct federal funds, but also organizations that "control[] and manage[]" direct funding recipients. *Horner v. Kentucky High Sch. Athletic Ass'n.*, 43 F.3d 265, 272 (6th Cir. 1994); *B.P.J. v. W. Va. State Bd. Of Educ.*, 98 F.4th 542 (4th Cir. 2024). Multiple courts have held that where a school that is a recipient of federal funding "cedes controlling authority over a federally funded program to another entity, the

17

controlling entity is covered by Title IX regardless whether it is itself a recipient." *NCAA v. Smith*, 525 U.S. at 469-70. To hold otherwise would allow direct funding recipients to "avoid Title IX liability" by "ced[ing] control over their programs to indirect funding recipients." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007); *Barrs v. S. Conf.*, 734 F. Supp. 2d 1229 (N.D. Ala. 2010); *Comtys. for Equity v. Mich. High Sch. Athletic Ass'n.*, 80 F. Supp. 2d 729 (W.D. Mich. 2000).

However, Plaintiffs' novel legal theory is essentially the reverse of those cases, and posits that a private religious institution that does not receive federal funding is nonetheless subject to the restrictions and obligations of Title IX because it allegedly cedes some control to another entity (TSSAA) which also allegedly controls separate organizations that are direct recipients of federal funding. This theory of "reverse ceding of control" runs counter to the structure and logic of Title IX, which seeks to ensure that entities subject to Title IX cannot avoid their obligations by ceding control to entities that would not otherwise be subject to Title IX. It also runs counter to the definition of "recipient" in 34 C.F.R. § 106.2, which covers entities to which "[f]ederal financial assistance is extended directly or through another recipient," but does not mention or apply to entities that pay private funds to third parties that also receive federal funds from third-parties. There is no policy rationale why a school that receives no federal funds should be subject to Title IX because its students plays in sports tournaments with other schools that do receive federal funds.

Defendants have been unable to find any authority or case law to support Plaintiff's novel legal theory of reverse ceding of control. Indeed, as the cases cited above indicate, existing case law involving alleged ceding of controlling authority is made up of cases brought against athletic associations, sports leagues, board of education, or boards of regents, and not against individual private institutions. *See*, *e.g.*, *A.B. v. Haw. State Dep't of Educ.*, 386 F. Supp. 3d 1352 (Haw.

18

2019); *Alston v. Va. High School League, Inc.*, 144 F. Supp. 2d 526 (W.D. Va. 1999); *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965 (N.D. Ill. 2001); *Parker v. Ind. High Sch. Ath. Ass'n*, 2010 U.S. Dist. LEXIS 23409 (S.D. Ind. Mar. 11, 2010); *Kemether v. Penn. Interscholastic Ath. Ass'n*, 1999 U.S. Dist. LEXIS 17331 (E.D. Pa. Nov. 8, 1999). Those associations or boards would necessarily manage federal funds of any organization that received federal funds, but that would not be the case if the participating organization was a private organization that did not receive federal funds. The argument Plaintiffs promulgate would serve to impose all the obligations of Title IX on all private organizations unless they hermetically sealed themselves off from all interactions with other organizations or the rest of their respective communities. This misguided interpretation of Title IX application would essentially prohibit any association by private groups in the public sphere and amounts to an explicit infringement of free speech. *See*, *e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984); *Adkins v. Bd. of Educ.*, 982 F.2d 952 (6th Cir. 1993); *Boshers v. Maury Co. Bd. of Educ.*, 2025 U.S. Dist. LEXIS 250940 (M.D. Tenn. Oct. 28, 2025).

Regardless of whether there is any supporting case law or authority for Plaintiff's novel legal theory, the Complaint fails to state a claim upon which relief may be granted. Plaintiffs assert the "mere conclusory statements" that "Providence Academy ceded control of its operations, including but not limited to control of its athletic department in which the minor Plaintiff James Doe was a participant, to the TSSAA." Complaint ¶ 119. Plaintiffs provide no factual allegations that support such a conclusion. Plaintiffs failed to attach any agreement, contract, or instrument that would support their conclusory statements, and there is clearly no ceding of control required or indicated in the TSSAA Handbook. Accordingly, under the *Twombly*/*Iqbal* standard, Plaintiffs

19

have failed to state a claim under Title IX upon which relief may be granted, and Defendants are entitled to dismissal of Plaintiffs' Title IX claims as a matter of law.

## II. The Court should decline to exercise supplemental jurisdiction over Plaintiffs' Tennessee state law claims and dismiss them without prejudice.

Plaintiffs' Title IX claims are the only federal claims in the Complaint over which the Court has original jurisdiction. The remaining claims asserted by Plaintiffs are Tennessee state law claims against both Defendants, including negligence (Counts II and III) negligence per se (Counts III and VII), intentional infliction of emotional distress (Counts IV and VI), and negligent infliction of emotional distress (Count V). Complaint ¶¶ 113-200.

A district court "may decline to exercise supplemental jurisdiction over a claim" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ( "[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims.") The Sixth Circuit has advised against "needlessly deciding state law issues." *Landefeld v.Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).

In the case at bar, all Plaintiffs and Defendants are located in Washington County, Tennessee. Complaint ¶¶ 4-6. Discovery is just commencing, and the Court has yet not developed a strong familiarity with the facts of the Tennessee tort law claims. The interests of judicial economy do not favor maintaining the Tennessee state law claims in this district court. *Blakely v. U.S.*, 276 F.3d 853, 863 (6th Cir. 2002). This case was not originally removed from state court,

20

and remand is not available. Complaint, *supra*. Accordingly, dismissal of Plaintiffs' Tennessee state law claims without prejudice is appropriate. *See*, *e.g.*, *Burnett v. Griffith*, 33 F.4[th] 907 (6th Cir. 2022); *Parker v. Robertson*, 34 F. Supp. 3d 859 (M.D. Tenn. 2014).

## CONCLUSION

For the grounds stated above, the claims asserted by the minor Plaintiff James Doe through his parents under Title IX should be dismissed with prejudice for failure to state a claim upon which relief may be granted. As the Title IX claims are the only claims invoking federal jurisdiction, and there is no diversity between the parties, the remaining Tennessee state law claims should be dismissed without prejudice.

21

Respectfully submitted:

LEWIS THOMASON, P.C.

*/s/ Peter Robison*
Peter C. Robison, BPR #27498
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
Phone: 615-259-1343
probison@lewisthomason.com

*/s/ Mikel A. Towe*
Mikel A. Towe, BPR #32404
900 South Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37902
Phone: 865-546-4646
mtowe@lewisthomason.com

*Counsel for Defendants Providence Academy, Inc. and Benjamin Holland*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of January, 2026 a copy of the foregoing filing will be sent to all parties via Court's ECF system.

Tricia Herzfeld
Joe P. Leniski, Jr.
Daniel P. Hull
**HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL PLLC**
1920 Adelcia St., Suite 300
Nashville, Tennessee 37212
Email: tricia@hsglawgroup.com
         joey@hsglawgroup.com
         daniel@hsglawgroup.com

E. Patrick Hull
**THE HULL LAW FIRM**
201 W. Sullivan Street
Kingsport, Tennessee 37660
Sullivan Street at Shelby Street
Phone: (423) 247-6151
Email: pat@hull-firm.com

*/s/ Peter C. Robison*
Peter C. Robison

22