**IN THE UNITED STATES DISTRICT COURT,**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| JOHN AND MARY DOE | ) | |
| for themselves and their minor child, | ) | |
| JAMES DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:25-cv-170 |
| | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| PROVIDENCE ACADEMY, INC., AND | ) | |
| BENJAMIN HOLLAND, | ) | |
| | ) | |
| Defendants. | ) | |

---

## FIRST AMENDED COMPLAINT

---

Plaintiffs John and Mary Doe, on behalf of themselves and their minor son, James Doe, file this Complaint against Defendants and, upon information and belief, allege as follows:

### I. OVERVIEW

1.      This case is about James Doe, a fourteen-year old boy who was sexually assaulted by four of his classmates at Providence Academy ("Providence" or "PA") and then expelled from school six days later.  After learning of the incident Providence and its Headmaster, Defendant Benjamin Holland, treated the incident as if it were typical horseplay and blamed the minor James Doe for provoking the assault – a response that fails to acknowledge the seriousness of the situation, and that disregards specific Federal and State legal obligations attendant to responding to the sexual assault of a minor.  Three of the four assailants, whose involvement in the sexual assault is known to Providence and Defendant Holland, continue to attend school at PA.

2.      Since the sexual assault, and his subsequent expulsion from Providence Academy, the lives of the minor Plaintiff James Doe and his family have become difficult to endure. The minor Plaintiff has been the victim of jokes and taunts because of the sexual assault he endured; he has been shunned by his friends and by Providence faculty and staff; he has become more introverted and less willing to talk, about the assault or anything else; he has undergone changes to his personality – becoming less social and more cynical, with a lack of trust in any authority figure (including his parents); Plaintiffs John and Mary Doe have been shunned by old friends and new friends; a parent of the minor assailant has said that the Does need to drop the victim act, which will not get them far in life; and in short the minor James Doe and his family have been treated as if they, and not his assailants, deserve to feel shame and scorn for what happened to their child. Plaintiffs will live with the memory of the sexual assault for the rest of their lives. They have received, and continue to receive, therapy to help them process what happened and how best to heal. And they expect to need such assistance for the foreseeable future.

3.      Following the sexual assault, PA's treatment of the minor James Doe, and the ridicule he has faced from Benjamin Holland, current and former Providence staff and classmates, and the community, has damaged the minor James Doe forever. He will carry the scars not only of the assault – but of a Providence community that first blamed him and then turned its back on him – for the rest of his life.

## II. PARTIES

4.      Plaintiffs John and Mary Doe are a legally married couple, both over the age of 21, and both residents of Washington County, Tennessee. Their minor son, James Doe, is a resident of Washington County, Tennessee, where he lives with his parents. The minor James Doe attended

school at Providence Academy until the eighth grade, when he was summarily suspended and then expelled after four of his classmates sexually assaulted him.

5.       Defendant Providence Academy, Inc. is a private Christian school located in Washington County, Tennessee.  It may be served with process *via* its registered agent, Matt Jones, 165 Willow Bnd Telford, Tennessee 37690, at its principal place of business at 2788 Carroll Creek Road, Johnson City, Tennessee 37615, or wherever it may be found.

6.       Defendant Benjamin Holland is the Headmaster, or Head of School at Defendant Providence Academy, Inc.  Defendant Holland also runs a consulting company called *Holland Education Consulting*, through which he touts himself as "one of the longest tenured Heads of School in East Tennessee" with a "proven track record in school growth, fundraising and excellence in operations."[1]  The faculty at *Holland Education Counseling* consists of several individuals who currently serve as subordinates to Mr. Holland at Providence Academy.[2]

Mr. Holland is an adult resident of Washington County, Tennessee, and he may be served with process at 518 E. Holston Avenue, Johnson City, Tennessee 37601, or wherever he may be found.

## III.  JURISDICTION AND VENUE

7.       Subject matter jurisdiction lies in this Court.  This lawsuit raises a Federal question, specifically Plaintiffs' Title IX claim, over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state law claims against these

---

[1]  https://www.hollandeducationconsulting.com/ (last accessed on October 13, 2025).

[2]  For example, Shona Hoover, Jordy Whetsell, and Mark Koscak, are all affiliated with Defendant Benjamin Holland's consulting business, and they all serve as Defendant Holland's subordinates at Providence Academy.  *See*  https://www.hollandeducationconsulting.com/about https://www.providenceacademy.com/faculty-and-staff (both sites last accessed on September 10, 2025).

Defendants because of their close relation to the conduct of these Defendants placed at issue in the Title IX claim.  UNITED STATES CONSTITUTION, Art. III § 2; 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over all Defendants.  28 U.S.C. § 1391; Fed. R. Civ. P. 4(k)(1); TENN. CODE ANN. § 20-2-223.

9.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391.  All parties are, and at all relevant times have been, residents of this judicial district.  And all, or a substantial part, of the events giving rise to this lawsuit occurred in Washington County, Tennessee.

## IV.  FACTUAL SUMMARY

10.      Plaintiffs John and Mary Doe, and their minor son James Doe, file this Complaint pseudonymously to protect their family from even further hurt, anguish, pain, and harassment.

11.      On or about February 11, 2024, the minor James Doe was at the house of one of his baseball teammates to watch Super Bowl LVIII between the San Francisco 49ers and the Kansas City Chiefs.

12.      At that time, James Doe was a fourteen year-old eighth-grade student at Defendant Providence Academy, and on February 11, he and a number of other Providence students gathered at the same house in Washington County, Tennessee, for a  Super Bowl watch party.

13.      At some point during the game, four of James Doe's Providence classmates raped him while others at the gathering watched.  Three of the perpetrators pinned him to the floor and spread his legs, while they taunted the minor James Doe and laughed at his attempts to free himself. While the other three perpetrators held him in position, the minor L.T. sat on his chest and digitally penetrated his anus, drawing blood.

14.      Following the attack, the minor L.T. asked the minor Plaintiff James Doe whether he was "still bleeding, or what?" in front of a classroom full of students and Providence Latin

teacher Grayson Bledsoe.  Providence made no inquiry, and neither it nor Mr. Bledsoe took any action.

15.     After the minor James Doe reported the incident to Providence, Defendant Benjamin Holland called his parents to the school for an emergency meeting.  The minor Doe was forced to attend the meeting with Defendant Benjamin Holland, two other Providence faculty members, and Plaintiffs John and Mary Doe.  The minor Doe was not allowed to see, or speak to, his family before the meeting.

16.     At the meeting, Defendant Holland took the lead, without ensuring the minor was in a comfortable environment, and commenced to ask the minor Doe a series of questions about the assault.  Plaintiffs did not see anyone present at the meeting making verbatim notes of what the minor Doe said at the meeting.   Other faculty members were allowed to speak, although the only one who added material input was Shonda Hoover, who promised to help the Does find resources to assist them in coping with the trauma.  Ms. Hoover's offer of help never materialized.  Defendant Holland and Shonda Hoover are still employed at Providence Academy.  The other faculty member at the meeting is not.  The meeting ended with Defendant Benjamin Holland telling the Does they could leave.

17.     The next communication the Does received from Providence was an email from Defendant Holland stating that the minor James Doe had been indefinitely suspended.  Neither Providence nor Defendant Holland would respond to Ms. Doe's requests for information, or to her inquiries about having the minor's schoolwork sent to their home so he could keep up during the unexplained suspension.

18.     The next communication the Does received from Providence was a phone call from Defendant Benjamin Holland, who called to speak with the minor Doe while he was in the hospital

undergoing a rape kit analysis. Not suspecting the cruelty that would come next, Ms. Doe handed the phone to the minor Doe – whereupon Defendant Holland told James Doe that he had been doing his own investigation, and he asked whether the minor Doe had not "corn dogged"[3] one of his assailants first. When the minor said, "No, Mr. Holland, I promise," Defendant Benjamin Holland replied, "I think you did; I've been doing some looking around, and I think you started it…"

19.    The next communication the Does received from Providence was an email informing them that the minor Plaintiff James Doe had been expelled because he presented a threat of gun violence. Neither Providence nor Defendant Holland ever spoke with Plaintiffs about the alleged "threat of violence" prior to the expulsion notification.

20.    The minor James Doe presented no threat of violence, which Providence would have known had it performed a proper investigation. In any event, Providence is aware that three of its current students participated in the perpetration of *actual* violence against a fellow student and are permitted to attend school at Providence.

21.    In conjunction with the expulsion of the minor James Doe, Defendants Providence Academy and Benjamin Holland painted him as a potential murderer. Providence and Holland notified certain individuals to lock their doors, and keep out of public view, because the minor James Doe may kill them.

22.    The minor James Doe never presented a threat of gun violence, and he never intended to kill anyone.

---

[3] "Corn dogging," as relevant here, is a slang term referring to the practice of approaching a person from behind and "knee them up there [*sic*] [rear end]…." http://corn-dog.urbanup.com/1523261 (last accessed October 13, 2025).

23.     Defendant Providence Academy and Defendant Benjamin Holland failed to carry out their legal obligations with respect to reporting and investigating the sexual assault of a minor. For example, and without limitation, Defendants failed to create a safe environment for the minor James Doe to relay his version of events; they failed to properly record the minor's statement; their investigation involved asking the minor questions in contravention of statutory requirements; they spoke with witnesses without regard for formal procedure of the involvement of law enforcement; and they used at least one statement, and one piece of evidence, obtained from witnesses during the course of their improper investigation against the minor James Doe as an excuse to suspend him after he was raped.

24.     The law provides certain steps schools and teachers must take to make the victim of sexual abuse feel safe, and not to feel as though they face retribution for reporting the crime. Defendants' so-called investigation accomplished the opposite: it was performed without regard to their legal duties, and its mishandling led to e.g., blaming a minor child for his own rape and then expelling him from school.

25.     Defendants expelled from school the minor victim of a sexual assault.

26.     Three students whom Defendants know participated in the sexual assault of a minor are currently enrolled at Providence Academy.

27.     All four perpetrators were minors and were also in the eighth grade at Providence Academy, and their identities are known, and at all relevant times were known, to Defendant Providence Academy and Defendant Benjamin Holland.

28.     All the perpetrators, save the minor L.T., continue to attend Providence Academy. All three play at least one school-sponsored, and TSSAA sanctioned, sport.[4]  The minor L.T. currently attends public school in Washington County, Tennessee, where he plays at least one school-sponsored and TSSAA-sanctioned sport.

## V.  DETAILED FACTUAL ALLEGATIONS

### *The Sexual Assault*

29.     The minor James Doe, the minor L.T., Perpetrator No.  2, Perpetrator No. 3, and Perpetrator No. 4, were all students at Providence Academy on or about February 11, 2024.

30.     On or about February 11, 2024, James Doe was invited to a party at the home of a Providence Academy family in Washington County, Tennessee, for the stated purpose of watching the Super Bowl game on that date.  A number of other PA students attended this party, and all or most of these students were members of the wrestling team, the baseball team, or both, at Providence Academy.  James Doe was a member of the boys' baseball and wrestling teams.

31.     John and Mary Doe and James Doe believed that all of the students attending the party, and their parents, subscribed to the purpose and mission of the school and believed the party would be a safe atmosphere for their children..

32.     Although James Doe attended Providence, he had a harder time making friends than some of his peers – and he was excited about the invitation.

33.     On about February 11, 2024, and at some point during the Super Bowl game, Perpetrator No. 2, Perpetrator No. 3, and Perpetrator No. 4, pushed the minor James Doe to the ground.  While he was down on the ground, Perpetrators 2, 3, and 4, began grabbing his arms and

---

[4]  TSSAA stands for the Tennessee Secondary School Athletic Association.  Providence Academy is a TSSAA member institution and participates in Division II, Class A. https://portal.tssaa.org/common/directory/?id=409 (last accessed October 13, 2025.)

legs in an attempt to immobilize him. Quickly realizing that the boys meant serious harm to him, James Doe tried in vain to escape the attack.

34.     The perpetrators quickly secured James's arms and legs by holding tightly at first to move him into a "legs-spread" position and by squeezing tighter when he tried to escape. Eventually, they overpowered James Doe, and the grip of the three boys holding him in this position overpowered James Doe.

35.     After that, the Perpetrators taunted, tortured, and raped, the minor James Doe.

36.     Once in position, the minor L.T. sat on top of James Doe and taunted him – before anally penetrating the smaller boy forcefully with his hand.

37.     The four perpetrators tortured and sexually assaulted James Doe, as the other classmates in attendance at the party stood, watched, and encouraged the perpetrators.  While James Doe was being sexually assaulted, the perpetrators were laughing and making fun of him.

38.     As the attack happened, the minor James Doe called and pleaded for help – and he pleaded for his attackers to stop.  But they did not stop.  And he was unable to make them stop.

39.     The assault caused bodily injury, and the penetration caused the minor James Doe to bleed into his pants and underwear.

40.     The fourteen year-old minor James Doe was hurt physically and emotionally; he felt embarrassed; and he was afraid to report the assault to anyone, even his parents.

41.     At school following the attack, the minor L.T., stood up in Latin class and taunted the minor James Doe, asking aloud in front of the entire class,  "Hey, [James Doe] you still bleeding or what?"  Providence Academy teacher Grayson Bledsoe was present at the time.  Mr. Bledsoe said nothing, and he made no further inquiry.

42.     All four assailants were criminally charged.  Charges against the three students still at Providence Academy were dropped after they agreed to provide information and/or testimony relating to the minor L.T., who eventually pled guilty for his involvement in the crime.[5]  After it summarily expelled the victim minor Plaintiff following its illegal investigation spearheaded by Benjamin Holland, Providence eventually expelled the minor L.T.

43.     Providence expelled the minor L.T.  Despite the expulsion, however, the minor L.T. later attended Providence Academy dances, and the PA prom, where numerous photographs of him (including selfies he took) showed him laughing and enjoying himself with, among others, the three other assailants.   Those photographs were sent directly to the Plaintiff Mary Doe *via* Shutterfly.  By contrast, a condition of the minor James Doe's expulsion was that he not be allowed on school property or at school functions.

### *February 15: James Doe Reports the Assault to Providence*

44.     The minor Plaintiff James Doe had been physically bullied at Providence Academy before, on school grounds.  Plaintiff Mary Doe reported that incident to Providence Academy employee Shonda Hoover.  Providence Academy did not address the issue.

45.     News of the sexual assault on the minor James Doe had spread, to some extent, through the Providence student body.  As do many victims, the minor James Doe felt embarrassed about what happened – and he was afraid to report it.  The question about whether he was still bleeding was humiliating, and it struck at the reasons he had been hesitant to report the attack in the first place – for fear of harsh reprisal.

---

[5] Case 2:25-cv-00033-DCLC-CRW (E.D. Tenn.), Dkt. Nos. 1 & 40, ¶ 7 (case brought by the parents of the minor L.T., who was expelled from Providence, and referring to the minor by the initials "L.T.")

46.     Being openly taunted by the minor L.T. was sufficient to force the minor James Doe to overcome his fear and report the incident to Providence Academy.

47.     On February 15, 2024, James Doe reported the sexual assault to Providence Academy employee Elizabeth Bosse.  Ms. Bosse in turn told Defendant Holland what James Doe had told her, or some version of what James Doe had told her.  She also relayed the account, or some version of it, to a friend and fellow Providence employee who is related to one of the three Perpetrators who received no adverse action from Providence Academy

48.     James Doe reported the attack on February 15, 2024.  Defendants Providence Academy and Benjamin Holland became immediately duplicitous – and cruel.  On the day the minor James Doe reported the attack, February 15, Providence (1) called the Does in for a meeting, wherein it apologized for what had happened and promised to provide resources to the family; then later that same day (2) blamed the James Doe for the attack and suspended him, but none of the Perpetrators, from school; and then six days later, on February 21, 2024, expelled him from school on the same day one of the Perpetrators was arrested for his involvement in the sexual assault.

49.     During the school day on February 15, 2024, Providence employee Shona Hoover called Plaintiff Mary Doe and said that both parents needed to come to the school immediately for a meeting.  On the call, Ms. Hoover did not reveal what the meeting was about; she said only that the minor James Doe had revealed "some information," but that he "was not in trouble."  Plaintiffs John and Mary Doe arrived at the school shortly thereafter, and once there they met with Providence Academy personnel about the sexual assault of their son, James Doe.  The minor James Doe was also present at the meeting at Providence's instruction.  Providence did not provide the parents with an opportunity to speak with their son, the minor James Doe, before the meeting.

John and Mary Doe learned of the attack, for the first time, from Defendant Benjamin Holland at the February 15 meeting.

50.     Present at the February 15 meeting on behalf of Defendant Providence Academy were Defendant Holland; Shona Hoover; and Providence Academy's then- Dean of Boys and Head Girls' Basketball Coach, Michael Burns.   Defendant Holland and Ms. Hoover took the lead. Defendant Holland repeatedly apologized to Plaintiffs John and Mary Doe for what had happened to their minor son.  Shona Hoover assured Plaintiffs John and Mary Doe that she would be in touch with resources to help the minor James Doe navigate the deep emotional scars he received as a result of the attack.[6]

51.     Shonda Hoover has been promoted since the February 15 meeting, and she is currently the Director of Operations at Providence Academy.[7]

52.     Shonda Hoover is, and at all times relevant to this Complaint, affiliated with *Holland Education Consulting*.

53.     Plaintiffs John and Mary Doe left the meeting feeling many things – among them shock, confusion, anger, and profound grief.  They thought Providence had handled the meeting less than perfectly. But when they left the school in the afternoon of February 15 they did not suspect Providence or any of its employees of being bad actors who would knowingly cause their minor son, and their family, additional damage.  That changed hours later during the evening of February 15.

---

[6]  Mr. Burns is no longer employed by Providence Academy.  According to the latest information available to Plaintiffs, he is currently serving as Assistant Head of School at Oak Hill Academy in Mouth of Wilson, Virginia.   https://oak-hill.net/blog/celebrating-leadership/ (last accessed on October 13, 2025).

[7]  https://www.hollandeducationconsulting.com/about (last accessed on October 13, 2025).

54.     As she was leaving the meeting, Plaintiff Mary Doe told Defendant Holland that she was going to take the minor James Doe to the emergency room, that day, for inspection of his wounds and for a rape kit analysis.  She did so, and Plaintiff John Doe picked up the couple's other minor son and took him home.

***Later on February 15: Bemjamin Holland Blames the Child Rape Victim for the Attack***

55.     While Mary Doe was at the hospital, Defendant Benjamin Holland called Mary Doe's cell phone several times.  Mary Doe did not answer the calls, because she was with her son at the hospital, and Defendant Holland did not leave a voicemail.  After several tries, Holland then called Plaintiff John Doe's cell phone.  Mr. Doe answered, and Defendant Holland said he needed to speak to Mary Doe.  Mr. Doe relayed the message to his wife, who then called Defendant Holland from the hospital.  Holland answered, and he asked to speak with the minor James Doe. Ms. Doe asked the minor James Doe if he wanted to speak with Holland, and James Doe indicated that he did.

56.     Neither the mother, nor the minor James Doe, anticipated the conversation that would follow.

57.     Once on the phone with the minor James Doe, Defendant Holland asked, "Did you corn dog [one of the Perpetrators] first?"  When the minor answered he did not, Defendant Holland responded, "Well, I've asked around, and I think you did; I think you did corn dog [one of the Perpetrators] first."

58.     At the time he initiated the conversation falsely accusing the victim, minor James Doe, Defendant Holland knew that the minor was at the hospital undergoing a rape kit analysis.

59.     Based upon Holland's comments, Providence had undertaken an illegal investigation, in violation of State and Federal law, prior to notifying law enforcement officials of the sexual assault.  Such action is improper, negligent, and in violation of PA's legal obligations..

60.     As part of this investigation, as he made clear to the minor James Doe, Defendant Holland had gathered information from key witnesses before law enforcement officials were notified.

### *Later on February 15: Providence Suspends James Doe*

61.     On the night of February 15, 2024, following the meeting at Providence, Defendant Holland e-mailed Plaintiffs John and Mary Doe:

> Mr. and Mrs. [Doe],
>
> Regarding information received today about events that took place on 2/11/24, [James Doe] has been placed on indefinite suspension while an investigation is taking place.  I will be in touch when appropriate.
>
> In Christ,
> Ben Holland

62.     At the time Providence suspended the minor James Doe, it did not suspend any of the Perpetrators of the attack upon him.

63.     Providence later suspended, and then expelled, one of the Perpetrators who was criminally charged and convicted of his role in the attack.[8]  At the time of Plaintiff's last information, this Defendant Providence is entertaining this Perpetrator's application for reinstatement to the school.

64.     Providence never took any adverse action against the other three Perpetrators, even after they were criminally charged for their role in the attack.  The charges were later dropped.

---

[8]  Case 2:25-cv-00033-DCLC-CRW (E.D. Tenn.), Dkt. Nos. 1 & 40, ¶ 7.

***February 21: Providence Blames the Victim, Again, and Then Expels Him***

65.     When Plaintiff Mary Doe responded to the email the next day, February 16, 2024, asking what the reason for the suspension was, she received the following reply

> The investigation is now in the hands of the JCPD. We were also gravely concerned about the video that [the minor James Doe] sent depicting gun violence and the insinuation of a violent revenge to one of the students who was involved in the incident on Sunday. We will be in contact when appropriate.
>
> Ben Holland

66.     The "video depicting gun violence and the insinuation of a violent revenge" is an artifice created by Providence and Holland. Defendants obtained the video, which did not depict gun violence. through their illegal "investigation," and they never presented it to Plaintiffs as part of that "investigation." Instead, Defendants Holland and Providence Academy *told Plaintiff Mary Doe what the video meant*, and proceeded with the illegal investigation, suspension, and expulsion – and intentionally causing extreme mental anguish to the minor and his family. Furthering their cruelty, and the damage they inflicted, Defendants insinuated to the Providence community, including the family of the minor L.T., on or about February 16, 2025, that the minor James Doe (whom Providence and Defendant Holland referred to by name) may turn murderous.

67.     In other words, Providence expelled the victim, the minor James Doe, for what it (incorrectly) deemed to be a threat of violence learned through an illegal investigation.

68.     But Providence did not expel three of the assailants who carried out actual violence on the minor James Doe.

69.      What Defendants' actions and comments make clear he and Providence Academy knew the result before they completed, or even undertook, a proper investigation. Defendants were never curious; they believed they already had the answers, and they perceived their job to inform the Does of what those answers were.

70.     The minor L.T. was arrested for his role in the sexual assault of the minor James Doe on February 21, 2024.

71.     Defendant Providence Academy expelled the minor James Doe from school on the same day.

72.     Defendant Benjamin Holland called Mary Doe in the afternoon of February 21, and he left a recorded voicemail. In it, he apologized for what had happened to James Doe and acknowledged that it was awful. However, he went on to advise that Providence could not tolerate threats of violence and that the school would be expelling the minor James Doe.

73.     Again, Providence and Holland believed they had the answers without the need for a proper investigation conducted as required under law.  They did not want to conduct a legal investigation, as set forth in Tennessee and Federal law, so they did not.  Providence and Holland ignored the fact that the minor James Doe had been a victim of a sexual assault, and that they had specific, statutory, duties that mandated their conduct in the aftermath.

74.     And just like that, Providence Academy ridded itself of the victim after failing to comply with its legal duties – and after shaming and humiliating the victim, in addition to potentially placing an expulsion on his academic record.

75.     Neither the minor James Doe, nor his family, is obligated to pay for the wrongful acts of Defendants Providence and Holland.

**_Defendants PA and Holland Grossly Mishandle the Report of Child Sexual Abuse –_**
**_Failing to Comply with Federal or State Requirements_**

76.     Providence Academy does not, and on February 15, 2024, did not, have "policies and procedures relative to investigations into sexual assault and sexual misconduct.  *See, e.g.,* 34 CFR 106.8; 66 Fed. Reg. 5512.

77.     Providence Academy does not, and on February 15, 2024, did not have a designated Title IX coordinator.

78.     Neither Providence Academy nor Defendant Benjamin Holland performed a Title IX compliant investigation into the sexual abuse of the minor James Doe prior to suspending him or expelling him.

79.     Providence Academy is, and on February 15, 2024, was, a mandatory reporter of actual or suspected child sexual abuse under Tennessee state law – including but not necessarily limited to TENN. CODE ANN. §§ 37-1-605(a)(4), (d); 49-6-1601(d).

80.     Defendant Benjamin Holland is, and on February 15, 2024, was, a mandatory reporter of actual or suspected child sexual abuse under Tennessee state law – including but not necessarily limited to TENN. CODE ANN. §§ 37-1-605(a)(4), (d); 49-6-1601(d).

81.     When the minor James Doe reported the sexual abuse to Providence Academy, PA did not provide the minor James Doe with a quiet and private place to speak. TENN CODE ANN. § 49-6-1601(d).

82.     When the minor James Doe reported the sexual abuse to Providence Academy, PA did not provide the minor James Doe with a quiet and private place to speak. TENN CODE ANN. § 49-6-1601(d).

83.     When the minor James Doe reported the sexual abuse to Providence Academy, Defendant Benjamin Holland did not provide the minor James Doe with a quiet and private place to speak. TENN CODE ANN. § 49-6-1601(d).

84.     When the minor James Doe reported the sexual abuse to Providence Academy, PA did not allow him a full opportunity to tell his side of the story in his own words. TENN. CODE ANN. § 49-6-1601(d).

85.     When the minor James Doe reported the sexual abuse to Providence Academy, Defendant Benjamin Holland did not allow him a full opportunity to tell his side of the story in his own words.  TENN. CODE ANN. § 49-6-1601(d).

86.     When the minor James Doe reported the sexual abuse to Providence Academy, PA did not "[a]void conducting an investigation by asking the child detailed questions."  TENN. CODE ANN. § 49-6-1601(d).

87.     When the minor James Doe reported the sexual abuse to Providence Academy, Defendant Bemjamin Holland did not "[a]void conducting an investigation by asking the child detailed questions."  TENN. CODE ANN. § 49-6-1601(d).

88.     When the minor James Doe reported the sexual abuse to Providence Academy, PA did not "[r]efrain from making any statements to the child about the alleged abuse, the alleged abuser, or the consequences of the child reporting the alleged abuse."  TENN. CODE ANN. § 49-6-1601(d)(1)(B)(iv).

89.     When the minor James Doe reported the sexual abuse to Providence Academy, Defendant Bemjamin Holland did not "[r]efrain from making any statements to the child about the alleged abuse, the alleged abuser, or the consequences of the child reporting the alleged abuse."  TENN. CODE ANN. § 49-6-1601(d)(1)(B)(iv).

90.     After the sexual abuse occurred, Defendant Bemjamin Holland asked the minor James Doe if he "corn dogged" his assailants first to provoke the attack.  When the minor denied doing so, Defendant Bemjamin Holland challenged his denial, and said "I think you did."

91.     When the minor James Doe reported the sexual abuse to Providence Academy, PA did not "[m]ake every effort to write down the child's exact words."  TENN. CODE ANN. § 49-6-1601(d).

92.     When the minor James Doe reported the sexual abuse to Providence Academy, Defendant Benjamin Holland did not "make every effort to write down the child's exact words." TENN. CODE ANN. § 49-6-1601(d).

93.     Providence knew it had to expel the minor L.T., who eventually plead guilty[9] in connection with his role in the attack, and it did so.

94.     Providence suspended the other three assailants, pending the school's "investigation."

95.     After it confirmed that Perpetrators 2, 3, and 4, were involved in the minor James Doe's sexual assault, Defendants Providence and Benjamin Holland lifted the suspension and allowed the assailants to return to school.

96.     While three of the Perpetrators continue to attend PA and play sports – and while all four Perpetrators have attended school dances as if nothing at all happened – Providence has made the minor James Doe and his family the subject of rumors and innuendo.  James Doe has transferred schools, where the story (or various versions of it), has spread.  The minor James Doe has seen Providence faculty in public after his suspension, and when they saw him they declined to speak with him – even to say "hello,."  He failed to make the baseball team after freshman tryouts at his new school.

97.     When they go out, the Does see people noticing them (sometimes staring at them) but they do not know what exactly their onlookers have heard.  It is difficult for the entire family, and it is particularly humiliating for the minor James Doe – who now, often, refuses to leave the house.

---

[9]  Case 2:25-cv-00033-DCLC-CRW (E.D. Tenn.), Dkt. Nos. 1 & 40, ¶ 7.

***Plaintiffs' Current Situation Would Be Materially Different if Defendants
Providence and Holland Had Properly Handled the Situation***

98.     Defendant Benjamin Holland advertises his consulting services by telling clients and prospective clients, among other things, that he can help their Christian school "leave a legacy for the next generation."[10]

99.     In the matter of the sexual assault of the minor James Doe, the legacy of Providence and Defendant Benjamin Holland will be blaming the child rape victim for the attack he suffered and then, without conducting a proper investigation or otherwise adhering to his legal obligations, expelling the child victim from school – followed by the decision to allow three of the four confirmed attackers return to school.

100.    Defendant Providence Academy's arbitrary, illegal, and unjust, behavior is diametrically opposed to the core values to which it purports to adhere.

101.    Defendant Providence Academy's attendance has grown significantly in the last three-to-four years.  The school just finished an eight-million-dollar ($8,000,000.00) fundraising campaign for a new wing to the school.  Defendant Benjamin Holland is prominently featured in that video, as the face of Providence Academy, speaking about how God called certain families thirty years ago to start PA.

102.    But neither Defendant Ben Holland, nor Defendant Providence Academy, has exhibited the Christ-like kindness, or compassion, they publicly claim to value over everything else.  Instead, PA and Defendant Holland have tried to wash their hands of the minor James Doe, while three of the four assailants still attend Providence and participate in TSSAA-sanctioned athletics.

---

[10]  https://www.hollandeducationconsulting.com/about (last accessed on September 10, 2025).

103.     Defendants Providence Academy and Ben Holland, along with the minor Plaintiff's coaches and members of PA's athletic administration know or should know that three of the school's baseball players participated in the rape of a former teammate.  But none of those aware have taken any action, and the attackers are allowed to continue playing baseball while the school has expelled the minor victim and its faculty deliberately shuns Plaintiffs when they see them in public.

104.     John and Mary Doe trusted Providence which claimed to be in a "covenant relationship" with them, and to stand *in loco parentis*, as Providence promises parents of students and prospective students.  John and Mary Doe trusted the PA and Holland to provide a safe environment for James Doe while he attended school there. The school failed to do that: PA ignored the concerns of James and Mary Doe; they allowed the minor James Doe to be bullied; and, ultimately, the environment that PA and Holland have created led James Doe's sexual attackers to feel entitled to act as they pleased.

105.     John and Mary Doe also trusted Providence to handle the sexual assault with maturity, compassion, and in accordance with its professed values – because this is what Providence promises its families.  Indeed, others are counting on Providence to do the same; for example, one of its accrediting agencies, the Association of Classical & Christian Schools (the "ACCS") has mechanisms in place to promote at least "a degree of transparency" – including ensuring that member schools conduct themselves in a manner consistent with their statement of faith.[11]

---

[11] https://classicalchristian.org/wp-content/uploads/2023/11/Accreditation-Standards_11_01_23.pdf (last accessed on October 13, 2025).

106.    The school has failed Plaintiffs, and it has failed to live up to the values to which it claims to adhere.   Blaming a child rape victim for his own attack is unimaginably cruel; yet it is indicative of Providence's and Holland's carefully curated environment of entitlement and self-preservation.  Neither Providence nor Holland felt compelled to comply with their legal obligations to protect the minor victim, or to conduct a proper investigation into the sexual assault of a minor. The Providence community, many of whom are Plaintiffs' former friends, have followed the school's lead and no longer speak to Plaintiffs in public.

107.    Indeed, after the attack, John and Mary Doe and James Doe received thinly veiled threats from the father of the minor L.T., through a third-party, who told a Doe family member on or about August 20, 2024, that it would be best if the minor James Doe dropped the "victim act," and that "playing the victim won't get him [James Doe]" very far in life.

108.    James Doe suffered serious and severe physical, mental, emotional and psychological damage. John and Mary Doe have observed a dramatic change in James Doe's personality. He no longer trusts those in authority such as teachers, principals, coaches, and school administrators.  The minor James Doe suffered deep emotional scars that are consistent with being the victim of a violent sexual assault. Further, he has withdrawn from everyone in his life, including his family. He is undergoing intensive therapy at considerable expense for the trauma he endured from the sexual assault and Providence's treatment of him and its aftermath.

109.    The way in which Defendants, and others, have treated him make the minor James Doe believe the sexual assault has been an inconvenience to everyone around him – and he struggles with guilt about making an issue of the assault.

110.    No child should be forced to endure the crushing burden Defendants have placed upon the minor James Doe – to be punished, and made to feel guilty, about being sexually assaulted

– much less when those responsible failed to comply with laws meant to make victim children feel safe and cared for.

111.    The experience has caused severe trauma to James Doe, and the damage Defendants caused him will be permanent.

### *Tolling Agreement*

112.    The parties have executed a tolling agreement, which is in force as of the filing of this Complaint and prevents a party from raising timeliness as a defense in this action.

## VI.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Title IX, 20 U.S.C. § 1681, *et seq*.
### (Against Defendant Providence Academy)

113.    Plaintiffs incorporate their foregoing allegations as if they were set forth verbatim.

114.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a). Title IX applies to an otherwise qualifying institution, "any part of which is extended Federal financial assistance." *Id*. § 1687.

115.    Defendant Providence Academy, or some part of it, during all relevant time periods receives or continues to receive federal financial assistance.

116.    Providence Academy received at least $546,236.40 in Federal financial assistance through the Paycheck Protection Program (the "PPP").  Defendant's receipt of Federal PPP funds subjects it to Title IX.

117.    Providence Academy knew it would be subject to Title IX when it took the PPP money.

118.     As part of its obligations under PPP, Providence Academy was required to establish a Title IX coordinator and an internal structure to enable it to comply with Title IX.

119.     Providence Academy has never had a Title IX coordinator, and it has never had the internal structure to comply with Title IX.

120.     Providence Academy is a new member school of the Tennessee Secondary School Athletic Association (the "TSSAA"). The application process for prospective member schools is extensive, and it requires that prospective member schools address myriad issues (including but not limited to the school's policies and procedures for proper handling of issues covered by Title IX) to the TSSAA's satisfaction.

121.     Providence Academy voluntarily agreed to comply with Federal Title IX when it applied for membership in or, alternatively, when it was granted membership in, the Tennessee Secondary Schools Athletic Association (the "TSSAA"). By way of example but not of limitation, the TSSAA monitors and controls Providence Academy's sanctioned sports offerings, for which Federal Title IX is a direct and substantial driver.[12] Defendant's TSSAA application was submitted no later than 2021.[13] Defendant Providence Academy would have been obligated to, and upon information and belief did, address and confirm its Title IX compliance in its application to be a TSSAA member school. Defendant's application documents are not in the possession of the pleader but, rather, are in the possession of the Defendants and others including, but not limited to, the TSSAA. FED. R. CIV. P. 10; *cf.* TENN. R. CIV. P. 10.03(2).

---

[12]  https://tricitiessports.com/this-ones-for-the-girls-tssaa-celebrates-girls-sports-and-the-impact-of-p108828-527.htm (last accessed February 10, 2026); *see also* https://docs.google.com/forms/d/e/1FAIpQLSfwc7xRo1q_g3W6PoZOJ2qn_RtyUatUBmYjZGXBSKklnaBD6Q/viewform (last accessed February 10, 2026).

[13]  https://tricitiessports.com/providence-academy-to-request-tssaa-membership-at-wednesdays-board-of-cont-p105170-527.htm (last accessed February 10, 2026).

122.     Defendant Providence Academy was, and continues to be, the beneficiary of Federal financial assistance under the provisions of Title IX at all times relevant to this Complaint. As a result, Providence Academy is subject to Title IX.  And ongoing subjection to Title IX is Irrespective of the timing of  subjection to Title IX is an outcome contemplated by the PPP.

123.     Pleading in the alternative, Defendant Providence Academy ceded control of its operations, including but not limited to control of its athletic department in which the minor Plaintiff James Doe was a participant, to the TSSAA.  The TSSAA is a recipient of Federal financial assistance within the meaning of Title IX.[14]  20 U.S.C. § 1681(a).  By ceding control of all or part of its operations to the TSSAA, including submitting to the rule and regulations by which its athletic department shall operate, Defendant Providence Academy is subject to Title IX.

124.     Further pleading in the alternative, Providence Academy is organized as a § 501(c)(3) charitable organization, and it is exempt from the payment of federal income tax.  Its status as a tax-exempt entity, in conjunction with its receipt of Federal financial assistance, subjects it to Title IX.

125.     Pursuant to ¶¶ 114-119 (or any one of them), and further in light of the allegations in this Complaint, Defendant Providence Academy is subject to and bound by the provisions of Title IX.

126.     Title IX institutions, such as Defendant Providence Academy, are required to institute policies and procedures relative to investigations into sexual assault and sexual misconduct.  Those policies and procedures are subject to oversight and enforcement by the

---

[14]  https://www.tennessean.com/story/sports/high-school/2020/06/18/tssaa-high-school-athletics-association-receives-paycheck-protection-program-money/3213529001/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z115234e006000v115234b0058xxd005865&gca-ft=134&gca-ds=sophi&sltsgmt=0154_B (last accessed on October 13, 2025).

Federal government. The mandates for institutional policies and procedures in effect at the time relevant to this complaint were, *e.g.,* 34 CFR 106.8; 66 Fed. Reg. 5512. *Cf. Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025), *as amended* (Jan. 10, 2025), appeal docketed *sub nom. TN v. Linda McMahon*, *et al.*, No. 25-5206 (6th Cir. March 12, 2025).

127.    When Title IX institutions, such as Defendant Providence Academy, impose discipline or other adverse action upon a student, they may not act discriminate on the basis of sex. Nor may Title IX institutions, such as Defendant Providence Academy, retaliate against those who report sexual harassment.

128.    Covered institutions, such as Defendant Providence Academy, who violate Title IX may be held liable in private actions for monetary damages.

129.    At the times relevant to this Complaint, Defendant Providence Academy did not have Title IX-compliant policies or procedures in place to enable it to properly investigate allegations of sexual harassment. Nor did it have a staff member, or other person, to oversee or facilitate its compliance with Title IX.

130.    Defendant Providence Academy's behavior violates Title IX in the following ways:

a.    PA's decision to suspend the minor James Doe, and then expel him, after he was the victim of a sexual assault is an erroneous outcome;

b.    Defendant PA impermissibly retaliated against the minor James Doe for reporting sexual harassment, i.e., the sexual assault on or about February 11, 2024, when it suspended and then expelled him from school;

c.    Defendant PA further violated Federal law when it failed to present them with the purported evidence against the minor James Doe, by identifying him as a potential murderer to the Providence community, by denying him or his family

an opportunity to be heard during the so-called investigation, and by without
proper justification depriving the minor James Doe of the opportunity to attend
the school of his choice.

131.    Defendant Providence Academy suspended the minor James Doe, a male, from
school on the same day he reported the sexual assault.

132.    The suspension came after Providence accused the minor James Doe of "corn
dogging" one of his assailants first, thereby instigating the assault.

133.    Defendant Providence Academy expelled the minor James Doe from school on
February 21, 2024.

134.    On the same day, February 21, 2024, the minor L.T. was arrested in connection
with sexually assaulting the minor James Doe.

135.    Providence Academy was unprepared to deal with a male victim of sexual assault,
and it treated the minor James Doe differently on the basis of sex, i.e., because he was a male
student.

136.    Defendant Providence Academy treated this situation as horseplay and not as sexual
assault because Plaintiff James Doe is a male.

137.    The minor James Doe participated in protected activity when he reported the sexual
assault to Defendant Providence Academy on February 15, 2024.  Defendant Providence Academy
knew James Doe was seeking help from his attackers, and yet it suspended him from school the
very same day.  In other words, Providence retaliated against a fourteen year-old boy for reporting
that he was the victim of a sexual assault.  Providence did this because it believed it could make
the situation "go away" if it expelled James Doe; it did not believe his family had the resources,
or the resolve, to seek public vindication of James Doe's rights.

138.     Providence Academy failed to undertake a proper Title IX investigation.

139.     Providence Academy has no Title IX compliance officer; it has no one to field Title IX violation reports; and it has no formal procedures to govern its Title IX investigations.

140.     Providence Academy sanctioned a so-called investigation under Title IX, which consisted solely of those things that Defendant Benjamin Holland decided, in his sole discretion, to do.

141.     The minor James Doe, who asserts his claims through his parents John and Mary Doe, has been excluded from participation in, deprived of the benefits of, and subjected to discrimination under, an educational program (Defendant PA) receiving Federal financial assistance on the basis of sex.

142.     As a direct and proximate result of Defendant Providence Academy's violation of Federal Title IX, the minor James Doe and his parents have suffered actual and compensable harm, in an amount to be proven at trial, for which Providence Academy is liable.

143.     Defendant Providence Academy is also liable to Plaintiffs for punitive or exemplary damages under Title IX, in an amount to be proven at trial, because its conduct, which is the direct and proximate cause of Plaintiffs' damages, was willful, reckless, and/or grossly negligent.

144.     Plaintiffs also seek their reasonable attorney fees and all allowable costs.  42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**
**Negligence**
**(Against Defendant Providence Academy)**

145.     Plaintiffs incorporate their foregoing allegations as if they were set forth verbatim.

146.     Parents of PA students entrust the school to provide a safe learning environment, act consistently with its stated objectives and core values, and to keep their children safe from harm.

147.     Defendant Providence Academy says it takes this duty very seriously.

148.     The school publicly claims to "partner with believing families" with respect to the education of PA students.  And PA claims, again publicly, that it enters a "covenant relationship" with the parents of PA students for the benefit of their children and their children's education.[15] Entering this covenant relationship, as Providence currently explains it, places the school *in loco parentis*.   Defendant PA also pledges to "walk with families, through our brokenness, together…."[16]  Providence Academy failed to live up to this promise when it expelled the minor James Doe.

149.     Before Defendant Providence expelled him for reporting a sexual assault, the school in its 2023-2024 Student/Parent Handbook explained publicly that "Providence Academy is established to operate as an extension of the family to cooperatively assist parents to carry out their God-given educational duty (In Loco Parentis – in the place of the parent) by providing the particular type of Christian education outlined in the school's by-laws and mission statement."[17] And PA went on to say that its teachers should "[b]alance tenderness and mercy with firmness and discipline."[18]

---

[15]  https://vimeo.com/522544651 (last accessed on September 12, 2025).

[16]  *Id*.

[17]  https://irp.cdn-website.com/2e28f137/files/uploaded/Providence%20Academy%20Handbook%20-%2020232024.pdf,  p. 17 (last accessed on October 13, 2025).

[18]  *Id*. at 21 (same).

150.    With respect to student discipline, Providence's 2023-2024 Student/Parent Handbook, in effect during the time the minor James Doe attended the school, stated that "[t]he Providence Academy Principals are hired by the Board and are directly responsible for managing the daily operations of the school … including handling student discipline."[19] The Handbook goes on to state that "[s]tudents by virtue of their enrollment agree to live within the framework of the school's standards of conduct.  Agreeing to these standards obligates the student to assume responsibility for honorable adherence to them while under the jurisdiction of the school..  This is a matter of integrity."[20]  "A behavior, either on or off campus, including text messages sent after school hours, that indicates a student has little desire to live a life honoring God, or any conduct that gives evidence of disregard for the spirit of the school standards, is sufficient case for disciplinary action, including disenrollment, suspension, or expulsion."[21]

151.    Defendant PA's 2023-2024 disciplinary policy states that it "has four aspects which reflect God's principles of human behavior, given so that His children may function harmoniously in all aspects of human endeavor:

- Order is the organization which provides a good environment for learning.
- Training is the process of practicing what is right.
- Correction is the discouragement of wrong behavior.
- Praise or affirmation are used to encourage students to continue in obedience.[22]

… Any disruption of the classroom or school environment could lead to disciplinary action or dismissal.  These disruptions include, but are not limited to, overtly sexualized behavior, inappropriate dress, make-up, or hair that is a distraction to other students or disrupts the learning environment.[23]

---

[19]  *Id*. at 27 (same).

[20]  *Id*. at 74 (last accessed on October 13, 2025).

[21]  *Id*. at 75 (same).

[22]  *Id*.

[23]  *Id*.

152.     Defendant Providence Academy also told its parents and students that, while the school "generally follows the disciplinary procedures," it reserves the right to depart from them when a student "has engaged in egregious, immoral, or other unacceptable behavior."[24]

153.     The 2023-2024 Student/Parent Handbook gives examples of when suspension is appropriate: "[t]he Middle School and High School program do not experience a significant number of incidents that warrant out-of-school suspension (OSS).  *Only in extreme cases (fighting, language, bullying, etc.) or for repeat offenses of insubordination would a student be given OSS*."[25]

154.     Defendant Providence Academy owes a duty to its parents and students to act with reasonable care in accordance with its own established policies, in furtherance of its students' development and the school's mission, and to avoid causing harm to PA parents and children.

155.     Defendant Providence Academy's duty extends to instances in which it undertakes an investigation into allegations of sexual abuse, and to instances when it imposes student discipline.  The school owes Plaintiffs a duty to conduct a proper, lawful investigation, including ensuring that the investigation is led by someone competent to lead it.

156.     Defendant Providence Academy breached its duty of care to Plaintiffs John and Mary Doe, and their minor son James Doe, when it

- Retained Defendant Benjamin Holland as its headmaster, despite Holland's lack of substantive knowledge and training with respect to the vital issue of child sexual abuse;

---

[24] *Id*.

[25] *Id*. at 49 (last accessed on October 13, 2025) (emphasis added).

- Allowed Defendant Benjamin Holland to perform an unprofessional, *ad hoc*, investigation that failed to comply with applicable standards of fairness, reasonableness, and decency – and which failed to comply with applicable law;

- Participated in, and sanctioned, Holland's ill-advised and ill-conceived "investigation," which led to the expulsion of a child rape victim (after the child was blamed for instigating the attack);

- Called John and Mary Doe to a meeting in which the school made representations to the family that it know were false – such as that the minor James Doe "was not in trouble," and that PA would follow up with the family to provide resources to help navigate the difficult period;

- Omitted from that meeting, and all other decision-making functions, the Middle School Principal, whom PA's Student/Parent Handbook says is responsible for student discipline of middle school students;

- Failed to follow its own guidelines when dealing with Plaintiffs and responding to the sexual assault of the minor James Doe;

- Failed to have in place adequate procedures for the handling, and investigation, of reports of sexual assault;

- Failed to abide by Tennessee's statutory guidelines for investigating sexual abuse;

- Failed to abide by Federal statutory guidelines for investigating sexual abuse;

- Failed to notify law enforcement of the sexual assault until after Providence and Defendant Holland had gathered information from key witnesses in the course of the ill-formulated investigation;

- Failed to give sufficient weight to the severity of the circumstances;

- Assigned credibility to the "testimony" of all involved in the ill-formulated "investigation," except Plaintiffs and the minor James Doe;

- Suspended and then expelled the minor James Doe, who was the victim, instead of supporting him;

- Failed to follow its own disciplinary guidelines by suspending the minor James Doe on the same day he reported being sexually assaulted by PA students, but taking no immediate disciplinary action against the Perpetrators;

- Retaliated against the minor James Doe for reporting sexual misconduct;

- Accused the minor James Doe of being responsible for his own sexual assault;

- Allowed three of the four students who sexually assaulted the minor Plaintiff to remain students at the school – despite PA's knowledge of their involvement in actual physical violence against another student;

- Relied on an artifice – the so-called threat of violent retaliation by James Doe – with no basis in fact to expel the minor Plaintiff;

- Retaining as students three of the four sexual assailants whom PA knew to have engaged in *actual* violence;

- Failed to ensure the completeness, thoroughness, accuracy, or compliance with applicable law, of its illegal investigation into child sexual abuse;

- Failed to ensure the completeness, thoroughness, accuracy, or compliance with applicable law, of its illegal investigation into the video upon which Providence based its pretext to expel the minor Plaintiff;

- Failed to "walk through the brokenness," and/or or enter a "covenant relationship," with Plaintiffs – a duty which Providence assumed – when it summarily suspended the minor victim James Doe, and the cessation of any contact with the Doe family, in an attempt to silence them and make the situation go away by covering up the wrongdoing of the school and others;

157.    Defendant Providence Academy, its athletic director George Pitts, its baseball coach Jeff Reed, and the school's board of directors, all know or should know that players in the PA athletic program participated in the sexual assault of a former classmate.  They knew, or should have known, that they were expelling a child rape victim while retaining seventy-five percent of his attackers.  But they did nothing for the minor Plaintiff, whose expulsion from Providence has caused him and his family additional, actual, and compensable losses.

158.    Given the foregoing and considering Providence's interest in self-preservation, its interest in satisfying its donors and its accrediting agencies, and the lack of training and substantive knowledge of PA and Defendant Benjamin Holland in dealing with a child sexual assault, Defendants' inadequate, unprofessional, and unfair, *ad hoc* "investigation" – which led to the

wrongful and actionable expulsion of the minor Plaintiff – was foreseeable. It was also foreseeable that the necessarily flawed results of the illegal *ad hoc* investigation would cause compensable harm to the minor.

159.    And as a direct and proximate result of Defendant Providence Academy's negligent conduct, Plaintiffs John and Mary Doe, and their minor son James Doe, have suffered actual and compensable injury in an amount to be proved at trial.

**THIRD CAUSE OF ACTION**
**Negligence and**
**Negligence *Per Se***
**(Against Both Defendants)**

160.    Plaintiffs incorporate their foregoing allegations as if they were set forth verbatim.

161.    Defendants Providence Academy and Bemjamin Holland are both mandatory reporters of child sexual abuse under Tennessee law. *See, e.g.,* TENN. CODE ANN. §§ 37-1-403(a)(3); 37-1-605(a), (d); 49-6-1601(a).

162.    Tennessee law requires Defendant PA, and Defendant Holland, to report known or suspected child sexual abuse to the Tennessee Department of Children's Services ("DCS"). *See, e.g.,* TENN. CODE ANN. §§ 37-1-403(a)(3); 605(a),(d); 49-6-1601(a).

163.    Tennessee law prescribes the nature of a child sexual assault investigation, and it imposes a duty upon mandatory reporters to do, and refrain from doing, certain things. *See, e.g.,* TENN CODE ANN. § 49-6-1601(d); Complaint ¶¶ 76-87.

164.     Defendants Providence Academy and Benjamin Holland failed to comply with Tennessee statutory requirements with respect to child sexual abuse investigations. *Id*.

165.    Tennessee law places a statutory duty on mandatory reporters. Defendants Providence Academy and Benjamin Holland owed the minor James Doe a statutory duty to conduct a proper and compliant investigation.

166.    Defendants breached those duties when they failed to undertake a compliant investigation.

167.    Not only did Defendants fail to provide help; Providence caused substantially more trauma to John and Mary Doe and their minor son James Doe. Defendants Providence and Benjamin Holland disregarded their legal duties, and they were cruel and callous toward John and Mary Doe and their minor son James Doe.

168.    As a direct and proximate result of the negligence, and negligence *per se* of Defendants Providence Academy and Benjamin Holland, Plaintiffs John and Mary Doe, and their minor son James Doe, have suffered actual and compensable injury in an amount to be proved at trial.

**FOURTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**(Against Defendant Providence Academy)**

169.    Plaintiffs incorporate their foregoing allegations as if they were set forth verbatim.

170.    After learning that the minor James Doe was a victim of sexual assault, Defendant Providence Academy blamed him for the attack, suspended him from school, and then expelled him. The expulsion took place on the same day one of the Perpetrators of the attack was arrested for his involvement.

171.    James Doe's expulsion, and the guilt put upon him by Providence Academy for being responsible for his own attack, for spreading rumors that he may be a murderer, and then expelling him without undertaking a proper investigation has changed the boy's life. He is withdrawn; he is depressed; he no longer trusts figures of authority; and as word has spread of the attack he feels increasingly isolated and humiliated. Word has now spread to his new school, where he frequently receives taunts of a sexual nature. He has undergone, and will continue to undergo, intensive therapy as a result of the emotional anguish Providence Academy caused him.

Instead of supporting him and his family, Defendant Providence Academy blamed them and then tried to silence them.

172.    Plaintiffs John and Mary Doe are heartbroken over the tragedy that befell their minor son.  And they are confused, and angry, that Providence not only did nothing about it; they lied to the family, saying that the minor James doe "was not in trouble," when the school knew or should have known that was not completely true.  Shortly after the school told Mary and John Doe that their son was not in trouble, it sent them an email saying the minor had been suspended indefinitely.

173.    Plaintiffs later learned that, at the time their son was suspended, none of his assailants had yet faced any adverse action from Defendant Providence.  Plaintiffs have since learned that three of the four assailants, who are perpetrators of actual violence against another student, still attend Providence Academy.[26]

174.    Plaintiffs John and Mary Doe were forced to sit through the February 15, 2024, meeting with Defendant Benjamin Holland and others – before they knew what the meeting was about and without being allowed to see their son first.  John and Mary Doe are not the same people they were before Providence turned its back on them.  Not only do they have their own feelings of anger and trauma – for which they have had counseling; they must also stay strong for their minor son, who is enduring an unspeakable tragedy, and to help him navigate his way through the excruciatingly painful ordeal.

175.    During the time that Defendant Providence Academy was blaming the minor John Doe, and insinuating that he could be a murderer, his assailants (including the one finally expelled

---

[26] One or more of the perpetrators received a two-week suspension from Providence and were then allowed to return to school without further consequence.

by PA) continued to attend school dances – taking selfies with their friends as if nothing out of the ordinary had happened. Some of those photos made their way to Plaintiffs John and Mary Doe, which only increased her heartbrokenness and her anger.

176. The intentional betrayal of the Doe family by Defendant Providence Academy has left deep wounds, which have changed the course of their lives: no longer are they a close-knit family of four who enjoy time together, watching ball games and being outdoors. Defendant PA's betrayal has placed them all on a difficult path – full of hurt and intense grieving, outsiders trying to turn family members against them, as they attempt to regain some sense of "normal" even in a community that (like PA) looks at them collectively as if they upset the apple cart and should simply remain quiet about the incident so that no "important lives" are disrupted.

177. Defendant Providence Academy's betrayal of the Doe family was cruel, causing severe and extreme mental anguish to Plaintiffs John and Mary Doe, and their minor son James Doe, and altering their daily lives. The Does have been cast aside, made to feel inferior, told they should "drop the victim act," and made to feel that their current situation is of their own making. Plaintiffs John and Mary Doe, and their minor son James Doe, have and will continue to receive therapy for the trauma they experienced.

178. Providence Academy's treatment of Plaintiffs Mary and John Doe, and their minor son James Doe, was so outrageous that it cannot be tolerated by a civilized society.

179. Defendant Providence Academy knew, or deliberately disregarded a high degree of probability, that emotional distress would follow his actions.

180. Defendant Providence Academy's actions were reckless and/or intentional, and they are the direct and proximate cause of Plaintiffs' extreme emotional anguish.

181.    As a direct and proximate cause of Defendant Providence Academy's actions, Plaintiffs have suffered actual and compensable damages in an amount to be proven at trial.

182.    Because Defendant Providence Academy's conduct was intentional, or in the alternative reckless, Plaintiffs are entitled to punitive damages under Tennessee law and hereby seek the recovery of same.

**FIFTH CAUSE OF ACTION**
**Negligent Inflection of Emotional Distress**
**(Against Defendant Providence Academy)**

183.    Plaintiffs incorporate their foregoing allegations as if they were set forth verbatim.

184.    Pleading in the alternative, Plaintiffs allege that Defendant Providence Academy had a duty of reasonable care, including a duty to act reasonably so as not to cause emotional distress, to Plaintiffs John and Mary Doe and their minor son James Doe.

185.    Defendant Providence Academy breached that duty, as set forth above and in the following paragraph.

186.    Defendant Providence Academy's treatment of John and Mary Doe, and their minor son James Doe, has left all of them with deep wounds. Those wounds have changed the course of their lives: no longer are they a close-knit family of four who enjoy time together, watching ballgames, and being outdoors.  Defendant PA's conduct – including but not limited to the illegal February 15 meeting, the illegal *ad hoc* investigation, and the illegal suspension and expulsion of the minor James Doe – has placed the family on a difficult path full of hurt and intense grieving, as they attempt to regain some sense of "normal."  Plaintiffs are undertaking this in the face of a community that, like Providence, looks at them collectively as if they upset the apple cart and should simply remain quiet about the incident so that no "important lives" are disrupted.

187.    Defendant Providence Academy could have changed this outcome had it acted in accordance with its own guidelines, in compliance with applicable law, and as otherwise set forth herein.

188.    As a direct, proximate, and foreseeable, result of Defendant Providence Academy's negligent conduct, Plaintiffs John and Mary Doe and their minor son James Doe have suffered actual and compensable harm in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against Defendant Benjamin Holland)

189.    Plaintiffs incorporate their foregoing allegations as if they were set forth verbatim.

190.    Pleading in the alternative, Plaintiffs allege that Defendant Benjamin Holland acted outside the course and scope of his employment when he performed the actions described above – including but not limited to conducting an ill-formed and biased investigation; callously blaming the victim, the minor James Doe for "corn dogging" an assailant first, as the minor was undergoing a rape kit analysis; not conducting a proper investigation, as required by Tennessee and Federal law; publicizing that the minor James Doe could be a murderer bent on revenge; not recognizing the severity of the situation; failing to notify law enforcement personnel before gathering facts from key witnesses; protecting the relatives of Providence employees and wealthy donors, among others, instead of protecting the minor victim and his family; being less than truthful with the Doe family at the February 15 meeting; suspending the minor James Doe after he reported being the victim of sexual abuse; omitting the Middle School Principal, who is charged with student discipline, the February 15 meeting and any interaction with the Doe family after the accident; failing to take appropriate disciplinary action against all assailants, allowing three to remain students, and to participate in athletics, at Providence Academy despite their violation of PA policy

of committing actual violence; expelling the minor James Doe on the same day that the minor L.T. was arrested for his involvement in the attack; and for entertaining the readmission application of the minor L.T. before the relationship soured beyond repair.

191.     Pleading in the alternative, it was Benjamin Holland, individually, who so cruelly betrayed the Doe family.  His intentional betrayal of the Doe family has left deep wounds, which have changed the course of their lives: no longer are they a close-knit family of four who enjoy time together, watching ball games and being outdoors.  Defendant Holland's betrayal has placed them all on a difficult path – full of hurt and intense grieving, outsiders trying to turn family members against them, as they attempt to regain some sense of "normal" even in a community that (like PA) looks at them collectively as if they upset the apple cart and should simply remain quiet about the incident so that no "important lives" are disrupted.  Defendant Benjamin Holland's betrayal of the Doe family was cruel, causing severe and extreme mental anguish to Plaintiffs John and Mary Doe, and their minor son James Doe, and altering their daily lives.  The Does have been cast aside, made to feel inferior, told they should "drop the victim act," and made to feel that their current situation is of their own making.  Plaintiffs John and Mary Doe, and their minor son James Doe, have and will continue to receive therapy for the trauma they experienced.

192.     Defendant Benjamin Holland's treatment of Plaintiffs Mary and John Doe, and their minor son James Doe, was so outrageous that it cannot be tolerated by a civilized society.

193.     Defendant Benjamin Holland knew that emotional distress would follow his actions.

194.     In the alternative, Defendant Benjamin deliberately disregarded a high degree of probability that emotional distress would follow his actions.,

195.     Defendant Benjamin Holland's actions were reckless and/or intentional, and they are the direct and proximate cause of Plaintiffs' emotional distress.

## SEVENTH CAUSE OF ACTION
### Negligent Inflection of Emotional Distress
### (Against Defendant Benjamin Holland)

196.     Plaintiffs incorporate their foregoing allegations as if they were set forth verbatim.

197.     Pleading in the alternative, Plaintiffs allege that Defendant Benjamin Holland individually had a duty of reasonable care, including a duty to act reasonably so as not to cause emotional distress, to Plaintiffs John and Mary Doe and their minor son James Doe.

198.     Defendant Benjamin Holland breached that duty, as set forth above and in the following paragraph.

199.     Defendant Benjamin Holland runs a consulting enterprise, *Holland Education Consulting*, through which he advises other headmasters of best practices.

200.     In fact, Defendant Holland's website proclaims: "We understand the challenges that you face everyday and have real solutions with real results."

201.     Holding himself out as a headmaster knowledgeable on the management of schools, Holland knew or should have known, the proper procedure following a sexual assault on a minor.

202.     But Defendant Bejamin Holland did not follow the statutory requirements for conducting a proper investigation of the sexual assault on the minor James Doe, and the result he achieved for the minor James Doe was unfair, illegal, and it has changed the Does' lives forever. Defendant Holland disregarded the proper procedure, and, in its place, he inserted is own *ad hoc* investigatory procedures – which included, e.g., victim-blaming, mishandling evidence, and publicizing that the minor victim may turn murderous.

203.    Defendant Holland's illegal and unfair treatment of the Does, and his unfair and unjust expulsion of James Doe from Defendant Providence Academy – when three of the four assailants still attend school there – has left Plaintiffs John and Mary Doe and their minor son with deep wounds. Those wounds have changed the course of their lives: no longer are they a close-knit family of four who enjoy time together, watching ballgames, and being outdoors.  Defendant Benjamin Holland's conduct has placed the family on a difficult path – full of hurt and intense grieving, as they attempt to regain some sense of "normal" even in a community that (like PA) looks at them collectively as if they upset the apple cart and should simply remain quiet about the incident so that no "important lives" are disrupted.

204.    Defendant Benjamin Holland could have changed this outcome had it acted in accordance with its own guidelines, in compliance with applicable law, and as otherwise set forth herein.

205.    As a direct, proximate, and foreseeable, result of Defendant Benjamin Holland's negligent conduct, Plaintiffs John and Mary Doe and their minor son James Doe have suffered actual and compensable harm in an amount to be proven at trial.

206.    Plaintiff reserves the right to amend this Complaint to conform with the evidence.

## VI.  JURY DEMAND

Plaintiffs demand a trial by a jury of twelve (12), in all such cases so triable.

WHEREFORE, premises considered, Plaintiff respectfully asks the Court for the following:

A.  An Order on all counts judging Defendants, or one of them, solely liable for Plaintiff's compensatory damages in an amount not to exceed $3,000,000.00;

B.  In the alternative, an Order judging Defendants jointly and severally liable for the entirety of Plaintiffs' damages in an amount not to exceed $3,000,000.00;

C.  An Order awarding Plaintiffs punitive, or exemplary damages, in an amount not to exceed $10,000,000.00;

D.  An Order awarding Plaintiffs their reasonable attorney fees and costs, pursuant to 42 U.S.C. § 1988;

E.  An Order awarding Plaintiffs any other relief, at law or equity, that the Court believes appropriate.

DATED: February 11, 2026.

Respectfully submitted,

*/s/ Daniel P. Hull*
Tricia Herzfeld (BPR No. 26014)
Joe P. Leniski, Jr. (BPR No. 22891)
Daniel P. Hull (BPR No. 24511)
**HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL PLLC**
1920 Adelicia Street, Suite 300
Nashville, Tennessee 37212
Phone: (615) 800-6225
Email: tricia@hsglawgroup.com
        joey@hsglawgroup.com
        daniel@hsglawgroup.com

and

E. Patrick Hull (BPR No. 4437)
**THE HULL LAW FIRM**
201 W. Sullivan Street
Kingsport, Tennessee 37660
Sullivan Street at Shelby Street
Phone: (423) 247-6151
Email: pat@hull-firm.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2026, I filed the foregoing document electronically with Court's electronic case management system, which will send notification of such filing to all counsel of record, including:

Peter C. Robison
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
probison@lewisthomason.com

Mikel A. Towe, BPR #32404
900 South Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37902
Phone: 865-546-4646
mtowe@lewisthomason.com

*Attorneys for Defendants*

/s/ Daniel P. Hull
Daniel P. Hull