## DECLARATION OF BENJAMIN HOLLAND

I, Benjamin Holland, pursuant to 28 U.S.C. § 1746, state and declare under penalty of perjury the following:

1. I am over the age of eighteen years and am qualified to make the following statements based on my own personal knowledge.

2. Since 2018 I have been the Head of School at Providence Academy.

3. Providence Academy is a private Christian school that was formed in 1994, and since 1995 it has held tax-exempt status with the Internal Revenue Service under section 501(c)(3). A copy of the grant of Providence Academy's 501(c)(3) status is attached to this Declaration as Exhibit 1.

4. Like other schools, Providence Academy had to cease in-person operations after Governor Bill Lee signed Executive Order 17 prohibiting social gatherings of 10 or more people and other lock-down procedures implemented during the early days of the COVID-19 global pandemic.

5. After the U.S. Congress enacted legislation that created the Paycheck Protection Program ("PPP") through the Small Business Administration ("SBA"), Providence Academy applied to borrow PPP funds from Acclivity Financial, a subsidiary of Citizens Bank, to be able to continue to pay its teachers and staff.

6. Providence Academy borrowed $537,000.00 in PPP loans through Acclivity Financial and Citizens Bank, which funds were used to make payroll payments to its employees from April 17, 2020, through June 30, 2020. All borrowed PPP funds were disbursed prior to June 30, 2020. A copy of a Payroll Summary for Providence Academy for the period from April 17, 2020 through June 30, 2020 is attached as Exhibit 2.

7. Providence Academy later sought forgiveness for the PPP loans and interest it had incurred through the PPP program. A copy of Providence Academy's PPP Loan Forgiveness Application Form 3508EZ is attached to this Declaration as Exhibit 3.



EXHIBIT A

8. On or about November 6, 2020, Providence Academy received a notice from Acclivity Financial and Citizens Bank that its PPP loans had been fully forgiven by the SBA. A copy of that email notice is attached to this Declaration as Exhibit 4.

9. That period between April and November 2020 was the only time in which Defendant received any federal funds. Since November 6, 2020, Providence Academy has never been a recipient of any form of federal funding.

10. At no point during the 2023-2024 scholastic year was Providence Academy a recipient of any form of federal funding.

11. In 2021, Providence Academy applied for admission to the Tennessee Secondary School Athletic Association ("TSSAA"), which organizes and coordinates interscholastic athletics.

12. When Providence Academy applied for TSSAA membership it completed a TSSAA New Member Request Form and indicated it wanted to join Division II – Independent Schools. A copy of Providence Academy's application materials to join the TSSAA is attached as Exhibit 5.

13. The purpose of the TSSAA, according to the TSSAA Handbook for 2023-2024, is to "stimulate and regulate interscholastic athletic competition among member schools in accordance with the standards established by those schools in the TSSAA Bylaws." Exhibit 6, 2023-2024 TSSAA Handbook ("TSSAA Handbook") p. 1.

14. Providence Academy was admitted as a member school to Division II on or about February 8, 2022, and agreed to ensure that its school teams and coaches abided by the Bylaws of the TSSAA and rules contained in the TSSAA Handbook. However, Providence Academy maintained controlling authority over its athletic department along with the rest of the school,

15. None of Providence Academy's operations in the 2023-2024 school year were funded in any way by federal funding.

16. The TSSAA did not and does not control the operations, finances, or management of Providence Academy.

17. Providence Academy receives no funding from the TSSAA. In fact, Providence is required to pay dues and a share of gate revenue to the TSSAA for tournaments and events organized by the TSSAA. Providence doesn't even receive any funding from the TSSAA if its sports teams compete in state championships.

18. The expectations and agreements between Providence Academy and its students for the 2023-2024 school year are set forth in Providence Academy's 2023-2024 Student Handbook. A copy of that handbook is attached to this Declaration as Exhibit 7.

19. Providence Academy learned that on February 11, 2024, a private party was held at a private residence to watch the broadcast of the Super Bowl (the "Super Bowl party"), and some students of Providence Academy attended that party.

20. The Super Bowl party was not a school function and did not take place on school property. No employee Providence Academy was in attendance.

21. On February 15, 2024, Providence Academy received a report from Plaintiff James Doe that he had attended the Super Bowl party, and while there, he was assaulted by another minor child (identified as "L.T.") who was also a student at Providence Academy.

22. Providence gathered information from James Doe and other students who were present by interviewing them in my office with their parents present, allowing the students to describe what happened in their own words, with note-takers present to write down the students' words as much as possible.

23. During Providence Academy's investigation of the allegations, the minor L.T. admitted to actions that constituted assault on James Doe.

24. Three other minors who attended the private Super Bowl party and who were also students at Providence Academy were also interviewed and found to have been involved in the incident to a lesser degree.

25. In his interview, the minor L.T. alleged that James Doe had assaulted him first. I then called Mary Doe by phone and asked to speak with James Doe, and he denied assaulting L.T. Providence Academy reported the allegation by L.T. to Johnson City Police, who later told me that the allegation against James Doe was recanted.

26. On the same day that James Doe reported the off-campus assault, Providence Academy notified the Department of Children's Services and local law enforcement about the allegations, as I believe is required by law.

27. On the evening of February 15, 2024, I received an email from Angela Bowman reporting that her son, a Providence Academy student and friend of James Doe, had received a message from James Doe containing a link to a video hosted on YouTube.

28. That video depicted scenes from the crime drama *Peaky Blinders* and depicted a character pointing a pistol at another character on the floor and also at the camera. An audio narration with subtitles stated "this person notices everything, they remain silent because they know that if they get angry it will hurt," and "the day it explodes it's a real storm."

29. I showed the video to an outside security professional retained by Providence Academy, Brian Boles of Raven 22 Harrell Group, and he called 911 and notified Johnson City Police, who investigated and confirmed to me that James Doe had sent the Video.

30. Providence Academy suspended all the students involved in the assault of James Doe, pending investigation.

31. Providence Academy determined to expel the minor L.T., and he was charged in Juvenile Court. Providence Academy allowed the other students present at the Super Bowl party to return to school and charges against them were dropped.

32. After Johnson City Police confirmed that James Doe had sent the video, Providence Academy determined to expel him. The expulsion was based only on the video James Doe sent.

33. I make this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

Further declarant saith not.

Benjamin Holland
Head of School
Providence Academy

11/6/26
Date