# [Torbett v. Providence Acad.](#)

United States District Court for the Eastern District of Tennessee

October 19, 2026, Filed

No. 2:25-CV-00033-DCLC-CRW


**Reporter**
2026 U.S. Dist. LEXIS 238404 *; 2026 LX 626492


LANCE and CHRISTIANA TORBETT, as biological parents and next friends of minor Plaintiff L.T., Plaintiffs, v. PROVIDENCE ACADEMY, Defendant.

**Counsel:** **[*1]** For Lance Torbett, Christiana Torbett, Plaintiffs: Arthur F Knight, III, Law Office of Arthur F Knight, Knoxville, TN.

For Providence Academy, Defendant: Mikel Alan Towe, LEAD ATTORNEY, Lewis Thomason, Knoxville, TN; Peter C Robison, LEAD ATTORNEY, Lewis Thomason, P.C., Nashville, TN.

**Judges:** Clifton L. Corker, United States District Judge.

**Opinion by:** Clifton L. Corker

## Opinion

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Providence Academy's Second Motion for Summary Judgment [Doc. 77], Providence Academy's Memorandum of Law in Support [Doc. 78], Plaintiffs' Response [Doc. 82], and Plaintiffs' Memorandum of Law [Doc. 83]. For the reasons herein, the Court will grant Providence Academy's motion.

### I. BACKGROUND

Plaintiff L.T. is a former student of Defendant Providence Academy, a private Christian school that holds tax-exempt status under *26 U.S.C. § 501(c)(3)*. [First Holland Decl., Doc. 48-1, at 1]. On February 11, 2024, L.T. attended a Super Bowl party at a private residence, and another minor student of Providence Academy claimed that L.T. had sexually assaulted him there. [Christina Torbett Decl., Doc. 82- 2, at 1]. Providence Academy began to investigate the alleged sexual assault, and while its investigation was pending, it placed L.T. on suspension. [First **[*2]** Holland Decl., Doc. 48- 1, at 3].

After completing the investigation, Providence Academy expelled L.T. But before Providence Academy could notify L.T. of its decision to expel him, L.T.'s parents informed Providence Academy that they were withdrawing him from the school. [Lance Torbett Decl., Doc. 82-1, at 2; First Holland Decl., Doc. 48-1, at 1]. Providence Academy issued a notice of expulsion anyway, after L.T.'s parents had withdrawn him. [Lance Torbett Decl., Doc. 82-1, at 2; First Holland Decl., Doc. 48-1, at 3]. L.T. was later charged in juvenile court and, after entering an *Alford* plea, was sentenced to probation. [Lance Torbett Decl., Doc. 82-1, at 3-4].

L.T., through his biological parents, now sues Providence Academy in this Court for suspending and subsequently expelling him without affording him due process of law. They claim that L.T. would have faced neither expulsion nor prosecution had Providence Academy provided him with due process, [Second Am. Compl., Doc. 71, at 2-3], and they allege that Providence Academy's conduct violated *Title IX of the Education Amendments of 1972, 20 U.S.C. §*



EXHIBIT B

1681 et seq. [*id.*at 1, 4]. And Plaintiffs claim that Providence Academy breached "enrollment contracts incorporated [Providence Academy's] Student Handbook **[*3]** by reference and implication." [*Id.* at 4]. Providence Academy now moves for summary judgment on Plaintiffs' claims, and Plaintiffs oppose Providence Academy's motion. Having carefully considered the parties' arguments, the Court will now rule on Providence Academy's motion.

## II. Legal Standard

Summary judgment is proper when the movant shows, or "point[s] out to the district court," Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—has no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. Celotex, 477 U.S. at 323. The movant discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, id. at 325, at which point the nonmoving party, to survive summary judgment, must identify facts in the record that create a genuine issue of material fact, id. at 324.

Not every factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" **[*4]** if it may affect the case's outcome under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See* Hill v. Homeward Residential, Inc., 799 F.3d 544, 550 (6th Cir. 2015).

## III. Analysis

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "The purpose of Title IX is to protect 'individuals from discriminatory practices carried out by recipients of federal funds,'" Doe on Behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., 35 F.4th 459, 464-65 (6th Cir. 2022) (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)). Title IX accomplishes this purpose by conditioning federal financial assistance on the recipient's agreement not to **[*5]** discriminate on the basis of sex. Gebser, 524 U.S. at 286.

"Title IX is applicable only to certain education institutions receiving federal financial assistance," Cannon v. Univ. of Chi., 441 U.S. 677, 695 n.17, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979), and a defendant's receipt of federal financial assistance is therefore an element of a Title IX claim, Hall v. Millersville Univ., 22 F.4th 397, 408 (3d Cir. 2022); Doe by & through Doe v. Currey Ingram Acad., 721 F. Supp. 3d 682, 690 (M.D. Tenn. 2024). Plaintiffs assert that Providence Academy receives federal financial assistance under Title IX in five ways: (1) its receipt of loans under the federal Paycheck Protection Program ("PPP") during the COVID-19 pandemic; (2) its federal tax-exempt status; (3) its alleged receipt of "federal financial assistance utilizing federal monies and benefits in the administration of and/or attending training and other sessions, grants, and other benefits"; (4) its agreement to comply with Title IX when it applied for membership with the Tennessee Secondary School Athletic Association ("TSSAA"); and (5) its cession of control over its athletic department to the TSSAA, which, according to Plaintiffs, receives "federal financial assistance within the meaning of Title IX." [Second Am. Compl., Doc. 71, at 1-2].

Providence Academy moves for summary judgment on two independent grounds. First, it argues that the record contains no evidence from which a reasonable **[*6]** jury could find that its decision to suspend and expel L.T. constituted discrimination on the basis of sex. Second, it contends that Plaintiffs cannot establish that Providence Academy was a recipient of federal financial assistance subject to Title IX at the time Providence Academy suspended and expelled L.T.

The Court agrees that Plaintiffs have failed to establish a genuine dispute of material fact on either issue. First, the record contains no evidence that Providence Academy discriminated against L.T. on the basis of sex. Second, Plaintiffs have failed to demonstrate that Providence Academy received federal financial assistance when it suspended and expelled L.T. Either ground alone entitles Providence Academy to summary judgment on the Title IX claim. Plaintiffs' breach of contract claim fails as well, because the record contains no evidence of an enforceable contract or its breach.

**A. Plaintiffs' Claim under Title IX**

To begin, Plaintiffs do not allege discriminatory conduct by Providence Academy—much less discrimination on the basis of sex—and Providence Academy contends that it is entitled to summary judgment because the record lacks "any fact that would support a claim for discrimination." **[*7]** [Def.'s Mem., Doc. 78, at 15]. The Court agrees. The record contains no evidence that Providence Academy treated L.T. differently because of his sex. *See Arocho v. Ohio Univ., No. 20-4239, 2022 U.S. App. LEXIS 7414, 2022 WL 819734, at *3 (6th Cir. Mar. 18, 2022)* ("Title IX *requires* that a plaintiff suffer discrimination under an 'education program or activity.'" (emphasis added) (quoting *20 U.S.C. § 1681(a)*)). And if Plaintiffs are claiming that Providence Academy reached an erroneous outcome in L.T.'s disciplinary proceedings, an erroneous-outcome theory under Title IX likewise requires evidence of discrimination. *See Doe v. Baum, 903 F.3d 575, 585 (6th Cir. 2018)* ("A university violates Title IX when it reaches an erroneous outcome in a student's disciplinary proceeding *because of the student's sex."* (emphasis added) (citation omitted)). But even if the record contained evidence of sex discrimination, Providence Academy would still be entitled to summary judgment because, as Providence Academy rightly argues, the record lacks evidence that it receives federal financial assistance within the meaning of Title IX or that it was receiving such assistance when it suspended and expelled L.T. [Def.'s Mem., Doc. 78, at 7-15].

"Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX," **[*8]** *NCAA v. Smith, 525 U.S. 459, 468, 119 S. Ct. 924, 142 L. Ed. 2d 929 (1999)*; *see 34 C.F.R. § 106.2(i)* (defining "recipient" as any entity "to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance"), and Title IX's implementing regulations define "federal financial assistance" to include "[a] grant or loan of Federal financial assistance," *34 C.F.R. § 106.2(g)*. The lone evidence that Providence Academy received federal financial assistance is its receipt of PPP loans during the COVID-19 pandemic in 2020. *See E.H. by & through Herrera v. Valley Christian Acad., 616 F. Supp. 3d 1040, 1049 (C.D. Cal. 2022)* ("numerous district courts have held that PPP loans constitute federal financial assistance under similar anti-discrimination statutes" to Title IX (footnote and citations omitted)).

Title IX applies to educational programs or activities "receiving Federal financial assistance." *20 U.S.C. § 1681(a)*. The statute's use of the term "receiving" indicates that Title IX coverage depends on the current receipt of federal financial assistance, not merely its receipt at some point in the past. *See Welch v. United Network for Organ Sharing, 767 F. Supp. 3d 746, 778 (M.D. Tenn. 2025)*.

Since 2020, Providence Academy has received no federal funding of any kind, [First Holland Decl., Doc. 48-1, at 2], and Plaintiffs have produced no evidence to the contrary. Providence Academy's PPP loans were also **[*9]** fully forgiven in 2020, [*id.* at 1], and Plaintiffs do not dispute that fact. That Providence Academy had once *received* federal financial assistance in 2020, four years before the conduct alleged here, does not place Providence Academy within an indefinite sweep of Title IX, especially in light of the unrefuted evidence that the life of those loans ended in 2020. *Cf. Welch, 767 F. Supp. 3d at 778* ("The use of the word 'receiving'—the present participle of

'receive'—makes it unequivocally clear that the program or activity at issue must be receiving, or coming into possession of, such assistance. For [the plaintiff's] argument on the PPP loan to have merit, the Court would have to read 'receiving' as 'received.' It declines to do so here. Because the text of Title VI clearly disposes of this argument, the Court need not consider it further." (cleaned up) (citing *Brilliance Audio, Inc. v. Haights Cross Comms., Inc., 474 F.3d 365, 371 (6th Cir. 2007)*)); *see* *Gardner v. Sage Ridge Sch., 2025 U.S. Dist. LEXIS 114896, 2025 WL 1695131, at *7 (D. Nev. June 17, 2025)* ("[P]er Title[] . . . IX, [the defendant] must be *receiving* federal assistance. . . . [P]ermitting applications of Titles VI and IX under the circumstances of this case would permit application of the statutes indefinitely and in situations where agreements between the federal government and entities have concluded. . . . [T]he Court will not read **[*10]** Title VI or IX requirements many years past the issuance of the limited and emergency PPP loan that [the defendant] received in 2020."); *Karanik v. Cape Fear Acad., Inc., 608 F. Supp. 3d 268, 284 (E.D.N.C. 2022)* (holding that a recipient of a PPP loan "had to comply with Title IX for *the life* of its loan" (emphasis added)). Providence Academy's receipt of the PPP loans in 2020 therefore does not qualify as "receiving Federal financial assistance" under Title IX. *20 U.S.C. § 1681(a)*.

Providence Academy's PPP loans had been forgiven, and its obligations under those loans had ended, well before it suspended and expelled L.T. Plaintiffs therefore cannot rely on those loans to establish that Providence Academy was receiving federal financial assistance within the meaning of Title IX when the alleged discrimination occurred.

Plaintiffs also contend that Providence Academy's tax-exempt status qualifies as receiving federal financial assistance under Title IX. Title IX's implementing regulations contain a "laundry list" of categories that satisfy the definition of "federal financial assistance," but "conspicuously absent from that laundry list is income tax exemption." *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n of Ill., Inc., 134 F. Supp. 2d 965, 971-72 (N.D. Ill. 2001)*. Case law, therefore, holds that an entity's tax-exempt status under *§ 501(c)(3)* does not by itself constitute receipt of federal **[*11]** financial assistance under Title IX. *See* *Currey Ingram Acad, 721 F. Supp. 3d at 688* ("Defendant's taxexempt status does not mean that it has been extended 'Federal financial assistance,' and thus does not mean that it is a 'recipient,' and thus does not mean that it is within the scope of Title IX."); *see also* *Buettner-Hartsoe v. Balt. Lutheran High Sch. Ass'n, 96 F.4th 707, 714 (4th Cir. 2024)* ("[S]ince Title IX's inception over fifty years ago, it has never been applied to organizations based solely on their tax exempt status. And for good reason. Although tax exemption is a tax benefit, that does not mean it is 'Federal financial assistance' for Title IX purposes."); *Davis v. Winston Preparatory Sch., No. 21 Civ. 8209 (PGG), 2025 U.S. Dist. LEXIS 123630, 2025 WL 1795350, at *17 (S.D.N.Y. June 30, 2025)* ("[T]he Court concludes that [the defendant's] status as a tax- exempt *Section 501(c)(3)* organization is not sufficient to demonstrate that it receives 'Federal financial assistance' for purposes of Title VI, Title IX, or the Rehabilitation Act."); *cf.* *Bachman v. Am. Soc'y of Clinical Pathologists, 577 F. Supp. 1257, 1265 (D.N.J. 1983)* (holding that mere tax exemption is not federal financial assistance under the Rehabilitation Act); *Stewart v. N.Y. Univ., 430 F. Supp. 1305, 1314 (S.D.N.Y. 1976)* (holding that tax benefits are insufficient to create federal financial assistance under Title VI); *but see* *Valley Christian Acad., 616 F. Supp. 3d at 1050* ("[T]he Court holds that [the defendant's] tax-exempt status confers a federal financial benefit that obligates compliance with Title IX.").

Plaintiffs offer no arguments that persuade the Court to depart from this weight of authority, especially **[*12]** because the Supreme Court's own descriptions of Title IX coverage point in the same direction. *See* *Smith, 525 U.S. at 468* ("Entities that *receive* federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only *benefit economically* from federal assistance are not." (emphasis added)); *see also* *Walz v. Tax Comm'n of N.Y.C., 397 U.S. 664, 675, 90 S. Ct. 1409, 25 L. Ed. 2d 697 (1970)* ("No one has ever suggested that tax exemption has converted libraries, art galleries, or hospitals into arms of the state or put employees 'on the public payroll.'").

While Plaintiffs also assert that Providence Academy, at some unspecified point in the past, has "received federal financial assistance utilizing federal monies and benefits in the administration of and/or attending training and other sessions, grants and other benefits," [Second Am. Compl., Doc. 71, at 1-2], Providence Academy has come forward with evidence that it has not received federal financial assistance of any kind except for the PPP loans in 2020, *see* [First Holland Decl., Doc. 48-1, at 2 ("Other than the past PPP loans . . . Providence Academy did not apply for or receive federal financial assistance for administration, training, or any other benefit of any kind prior to

February **[*13]** 2024.")]. Plaintiffs offer no evidence to the contrary, and again, the PPP loans do not qualify as federal financial assistance under Title IX, for the reasons the Court has already stated.

And lastly, Providence Academy's affiliation with the TSSAA does not make it a recipient of federal financial assistance under Title IX. Although Plaintiffs claim that the TSSAA "is a recipient of federal financial assistance within the meaning of Title IX," [Second Am. Compl., Doc. 71, at 2], the standard of liability under Title IX is not liability by mere association with an entity that receives federal financial assistance, *see* *Smith, 525 U.S. at 468* (determining that evidence that an entity "indirectly benefits" from another is, without more, "insufficient to trigger Title IX coverage"). Rather, the standard is receipt, meaning that Providence Academy must receive federal financial assistance from the TSSAA to be subject to liability under Title IX. *See* *34 C.F.R. § 106.2(i)* (stating that receipt requires federal financial assistance to be "extended directly" from the federal government or "*through another recipient"* (emphasis added)); *Smith, 525 U.S. at 468* (recognizing that receipt can occur "through an intermediary"). Plaintiffs allege only in general **[*14]** terms that Providence Academy receives federal financial assistance "directly or indirectly and/or through an intermediary." [Second Am. Compl., Doc. 71, at 2].

And the record is without evidence that Providence Academy agreed to comply with Title IX when it applied for membership with the TSSAA. Providence Academy's membership application with the TSSAA says nothing about whether it agreed to comply with Title IX, *see* [Membership Appl., Doc. 77-2], and Plaintiffs offer no evidence that Providence Academy agreed to comply with Title IX upon acceptance into the TSSAA. While Providence Academy acknowledges that it agreed to adhere to the TSSAA's bylaws and the TSSAA's handbook, [Second Holland Decl., Doc. 77- 1, at 1], the record is without evidence that either requires Providence Academy to comply with Title IX, *see* [TSSAA's Handbook, Doc. 77-3]. The record also lacks evidence that Providence Academy relinquished control of its athletic department to the TSSAA, and Providence Academy cites evidence that it did not in fact cede control over any of its internal operations to the TSSAA *See* [*id.* ("The TSSAA did not and does not control the operations, finances, or managements of Providence **[*15]** Academy.")]. Plaintiffs offer no evidence to the contrary.

Even if the record contained evidence that Providence Academy had relinquished control of its athletic department to the TSSAA, that fact would not establish Providence Academy's liability under Title IX. The delegation-of-control theory recognized in the case law addresses circumstances in which an entity receiving federal financial assistance delegates control over its educational programs to another entity. *See* *Horner v. Ky. High Sch. Athletic Ass'n, 43 F.3d 265, 272 (6th Cir. 1994)* (recognizing Title IX coverage where an entity controls and manages educational programs receiving federal assistance); *Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1294 (11th Cir. 2007)* (recognizing that a recipient of federal funds cannot avoid Title IX obligations by delegating control of its programs to another entity).

Here, however, Plaintiffs have failed to establish that Providence Academy itself received federal financial assistance during the relevant period. Its alleged delegation of authority to the TSSAA therefore cannot supply the missing statutory prerequisite. Accordingly, even assuming Providence Academy relinquished control over its athletic program, that arrangement does not establish that Providence Academy was subject to Title IX when it suspended and expelled **[*16]** L.T.

For these reasons, Providence Academy has demonstrated that the record contains insufficient evidence from which a reasonable jury could find either that it discriminated against L.T. on the basis of sex or that it was a recipient of federal financial assistance subject to Title IX at the time of the alleged discrimination. Plaintiffs have failed to identify evidence creating a genuine dispute of material fact on either issue. Providence Academy's motion for summary judgment on Plaintiffs' Title IX claim is **GRANTED**.

**B. Plaintiffs' Claim for Breach of Contract**

Before addressing the merits of the breach of contract claim, the Court must decide whether to retain jurisdiction over it. The Title IX claim was the only basis for original jurisdiction. Plaintiffs are citizens of Tennessee, Providence Academy is located in Johnson City, Tennessee. {Second Am. Compl., Doc. 71, at 1]. Plaintiffs do not invoke

diversity jurisdiction. The basis for the Court to hear the breach of contract claim rests only through supplemental jurisdiction. *See* 28 U.S.C. § 1331, 1367(a). The district court "may decline to exercise supplemental jurisdiction" over a state-law claim once it "has dismissed all claims over which it has original **[*17]** jurisdiction." 28 U.S.C. § 1367(c)(3). In the usual case, that is what the Court does because "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining statelaw claims." *Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)*; *Gamel v. City of Cincinnati, 625 F.3d 949, 952 (6th Cir. 2010)*. But this is not the usual case. The parties have completed discovery. Plaintiffs have amended their complaint twice, and this motion for summary judgment is Providence Academy's second motion. The breach of contract claim is not a novel claim or involve complex factual issues involving Tennessee law. Sending this claim to state court to relitigate for further litigation would waste resources that the parties and the Court have already invested. *See* *Harper v. AutoAlliance Intern., Inc., 392 F.3d 195, 211 (6th Cir. 2004)*. The Court therefore elects to exercise its discretion to retain supplemental jurisdiction over the breach of contract claim.

On the merits, Providence Academy satisfies its burden of establishing that it is entitled to summary judgment on this claim as well. Under Tennessee law, a claim for breach of contract has three elements: (1) the existence of an enforceable contract, (2) a party's nonperformance that breaches the contract, and (3) damages **[*18]** stemming from the breach. *Tenn. Homes v. Welch, 664 S.W.3d 1, 8 (Tenn. Ct. App. 2022)*. Plaintiffs claim they "executed certain enrollment contracts with [Providence Academy]," the "enrollment contracts incorporated [Providence Academy's] Student Handbook by reference and implication," and Providence Academy's "failure to abide by its own policies and procedures in its treatment of [L.T.] constitutes breach of contract." [Second Am. Compl., Doc. 71, at 4]. The Second Amended Complaint also alleges that Providence Academy's conduct, "as well as ignoring fundamental notions of due process[,] violates State law. [*Id.]*. But Plaintiffs identify no source of Tennessee law for that allegation other than the alleged enrollment contracts and the Student Handbook, so the Court treats it as part of the breach of contract claim.

Plaintiffs have not filed the alleged enrollment contracts in support of their breach-ofcontract claim, and they are not part of the record. In the absence of those alleged contracts— and in the absence of any other evidence that Plaintiffs and Providence Academy entered into a legally binding contractual relationship—no reasonable jury could find that Plaintiffs and Providence Academy executed enforceable enrollment contracts or **[*19]** that Providence Academy breached those contracts. *See* *Anderson, 477 U.S. at 249* ("[I]n the face of defendant's properly supported motion for summary judgment, the plaintiff could not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'" (citation omitted)); *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc., 864 F. Supp. 2d 629, 639 (E.D. Ky. 2012)* ("A simple assertion [of breach of contract] by the plaintiff, with no additional evidence is not sufficient to survive a motion for summary judgment."). Providence Academy therefore meets its burden as the movant for summary judgment, and its motion for summary judgment as to Plaintiffs' breach-of-contract claim is **GRANTED**.

## IV. Conclusion

For all these reasons, Providence Academy's Second Motion for Summary Judgment [Doc. 77] is **GRANTED**. All outstanding motions [Docs. 86-92] are **DENIED AS MOOT**, and the Clerk of Court is **DIRECTED** to close this case. The Court will enter a judgment order consistent with this Memorandum Opinion and Order.

**SO ORDERED**:

/s/ Clifton L. Corker

United States District Judge

**JUDGMENT ORDER**

For the reasons stated by the Court in the memorandum opinion filed with this Order, Defendant Providence Academy's Second Motion for Summary Judgment [Doc. 77] is hereby **GRANTED**. All outstanding motions [Docs. 86-92] are **DENIED [*20]  AS MOOT**, and the Clerk of Court is **DIRECTED** to close this case.

**SO ORDERED**:

/s/ Clifton L. Corker

United States District Judge

---

End of Document